BAILEY JACKSON v. THE STATE.

*No. 3162. Decided February 27.*

1. **Change of Venue Revised, when—Bill of Exceptions Containing Statement of Facts Necessary.** — Order of trial judge refusing a change of venue will not be revised upon appeal unless the facts upon which the same was based are presented in a bill of exceptions properly signed, approved, and filed at the term of court at which such order was made.

2. **Special Venire Writ Directed to Sheriff or Constable no Ground of Challenge to Array.**—While it is an irregularity to direct a writ of *venire facias* to "any constable" in addition to direction to the sheriff, it will not vacate the writ. Title of summoning officer is no ground of challenge to the array, nor does the command, "to the sheriff, or any other officer," in the alternative, render the writ void.

3. **Attachment for Absent Special Venireman—Applied for, When.**—To have an attachment for an absent special venireman, application should be made for same as soon as it is ascertained by the call at the court house door that any of the jurors summoned are not present. If not applied for at that time the presumption is that same is waived. Kennedy v. The State, 19 Texas Ct. App., 618; Id., 593.

4. **Statute not Mandatory—Substantial Compliance with—Injury Must be Shown.**—The statutes with regard to the formation of a jury in capital cases are directory, and not mandatory; and where substantial compliance has been observed, *held*, no irregularity or failure upon the part of the court to observe a literal compliance with said statute will be reversible error unless injury to defendant be shown.

5. **Charge of Court as to Threats—Failure to Charge as to Threats is no Error** where the testimony fails to manifest that deceased at the time of the homicide had done any act tending to show he was about to execute any threats which may have been made by him.

6. **Fact Case.**—See opinion for statement of facts *held* amply sufficient to sustain verdict and judgment for murder in the first degree.

APPEAL from the District Court of Wharton. Tried below before Hon. W. H. Burkhart.

This is an appeal from a judgment of conviction in the court below for murder in the first degree, wherein the punishment was assessed at a life-term in the penitentiary. It appeared that sometime before the killing the defendant and Ephraim Edwards, the deceased, had had their first difficulty about some gambling transactions. This trouble between them was intensified by the defendant paying attentions to deceased's "woman." Some month or more before the killing, defendant and this woman were riding along the road on horseback, when deceased rushed out of the bushes and commenced firing at defendant, and in jumping from his horse defendant dropped his pistol from his scabbard, and dismounting from his horse fled for his life to a house near by, deceased continuing to shoot at him until he had found safety inside the house. Deceased then told him that if he did not leave the county he would kill him. He then picked up defendant's pistol which had been dropped, and was seen in possession of it by several parties prior to the killing. On account of the threats of deceased

defendant did leave the county, and remained away for more than a month. He had returned only a day or two before the killing. He procured a gun, with which he said he intended to protect himself against the defendant.

On the day of the homicide, while defendant and one Tom Gay were talking about these threats, the deceased came up driving a wagon with six mules hitched to it, and when he got within shooting distance defendant fired upon him. The witness says: "Eph. (deceased) jumped straight up and came down between the mules on the wagon tongue. Bailey (defendant) ran up between the mules and shot him the second time. He (deceased) then ran out under the mules' bellies, and Bailey ran around the wagon and shot him again, and he fell on his hands and knees. As he started to raise up defendant shot him the fourth time. Deceased had no arms of any kind, and he made no demonstrations against the defendant at any time before or during the difficulty."

It was shown that deceased was a desperate, overbearing, and dangerous man.

No brief for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—It is provided by article 584 of the Code of Criminal Procedure, that "the order of the judge granting or refusing a change of venue shall not be revised upon appeal unless the facts upon which the same was based are presented in a bill of exceptions, properly signed and approved, and filed at the term of court at which said order was made." Under this rule the facts should have been embodied in and brought up by a bill of exceptions. Bowden v. The State, 12 Texas Ct. App., 246; Blackwell v. The State, 29 Texas Ct. App., 194. There being no statement of facts incorporated in the bill of exceptions reserved to the refusal of the court to change the venue in this case, that matter will not be considered by us.

In the motion to quash the special venire, it was objected to said writ that it was issued to the sheriff or any constable in the county, whereas by article 605 of the Code of Criminal Procedure it is provided that the writ shall command the sheriff to summon such number of persons as are named in the writ. In the case of Suit v. The State, *ante,* p. 319, where this same point was raised to the *venire facias,* it was said: "While it may have been an irregularity to direct a writ to any constable in addition to the sheriff, it can not be held that this would vacate the writ. The title of the summoning officer constitutes no ground for a challenge to the array; nor will the command to the sheriff or any other officer in the alternative vacate the process." The sheriff executed the writ.

When the special venire was called, four of the veniremen who had been summoned failed to appear and answer to their names, whereupon the defendant asked that the proceedings be stayed and that attachments be issued for the absentees to enforce their attendance; and it is further made to appear by the bill of exceptions in regard to this matter, that as the name of each absentee was reached on the call of the list defendant again claimed his right to his attendance, and again asked that an attachment be issued, and that he be not compelled to pass upon any venireman except upon the attendance of the whole list as served upon him, which the court refused to grant, and compelled the defendant to pass upon the jurors so presented and in attendance. By article 618 of the Code of Criminal Procedure it is provided, that "when a capital case is called for trial, and parties have announced ready for trial, the names of those summoned as jurors in the case shall be called at the court house door, and such as are present shall be seated in the jury-box, and such as are not present may be fined by the court in a sum not exceeding $50; and at the request of either party an attachment may issue for any person summoned who is not present, to have him brought forthwith before the court." Under this provision of our statute, in order for a party to avail himself of his right to have an attachment for the absent special venireman, he should apply for the same as soon as it is ascertained by the call at the court house door that any of the jurors summoned are not present. If he fails to apply for his attachment at that time, then he is presumed to have waived the same. Kennedy v. The State, 19 Texas Ct. App., 618; Thompson v. The State, Id., 593. It is not certain from the bill of exceptions in the record whether or not the attachments were applied for as soon as the names of the jurors were called at the court house door and it was ascertained that they were absent. In regard to these absent veniremen, it is shown by the explanation of the learned trial judge to the bill of exceptions, that "when the request for the attachment was made by the defendant's attorneys the court inquired of the sheriff the residence, and when he could likely get them into court. He stated that they lived in different and remote parts of the county, some as far as twenty miles from the court house; and that it would require two or three days to get them, if they could be got at all."

The fact as to the difficulty to secure the attendance of these veniremen as stated by the sheriff was not controverted or attempted to be controverted by the defendant or his counsel. Livar v. The State, 26 Texas Ct. App., 115. This should have been done in order to entitle the defendant to complain of the action of the court. But in case we concede any irregularity or error in the ruling of the court as above complained of, it is not an error of a reversible character, unless it be affirmatively shown by the defendant that injury has inured to him on account of the failure to observe any of the regulations prescribed by

the statute for the organization of the jury summoned under the special *venire facias.* The statutes with regard to the formation of a jury in capital cases are directory, and not mandatory; and where substantial compliance has been observed, no irregularity or failure upon the part of the court to observe a literal compliance with said statutes will be held reversible error, unless injury to the defendant is shown. Murray v. The State, 21 Texas Ct. App., 466; Hudson v. The State, 28 Texas Ct. App., 323. A defendant can not unreasonably delay a trial on account of the absence of the jurors who have been summoned. Habel v. The State, 28 Texas Ct. App., 588.

Defendant's counsel asked the court to charge the jury with regard to threats and also manslaughter as a part of the law of the case. This the court declined and refused to do, and in this we think there was no error, because while there was evidence of threats upon the part of deceased toward the defendant, the testimony adduced at the trial, and all the testimony, fails to manifest that the deceased at the time of the homicide had done any act tending to show he was about to execute any threats which he might have made. He was driving his wagon along at the time the defendant fired the first shot, and he had done nothing, save to check up his team, when he saw the gun was about to be fired. He made no demonstration to draw or use a weapon, if he had one about his person at the time. Defendant fired upon and shot deceased four times. There was no manslaughter in the case, and the court did not err in declining to charge upon that phase of the law.

Defendant was found guilty of murder in the first degree, and his punishment assessed at a life-term in the penitentiary. We have been unable to discover any material or reversible error in the record, and believing that the verdict and judgment are abundantly sustained by the evidence, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.