### CADENA v. STATE.   (No. 7533.)

(Court of Criminal Appeals of Texas.   March 28, 1923.   Rehearing Denied May 23, 1923.)

1. **Jury ⚖️131(15)—Questions to jurors as to effect of reasonable doubt of sanity or insanity properly excluded.**

In a prosecution for murder, there was no error in refusing to permit defendant to ask the prospective jurors if, after the evidence was all in, there should be in their minds a reasonable doubt as to whether or not defendant was sane or insane, would they give him the benefit of the doubt and find him insane? the form of the question being confusing and so framed as not to properly present an issue.

2. **Criminal law ⚖️470—Expert opinions not permitted to usurp functions of jury on matters of fact.**

Expert opinions must be limited to matters of science, skill, trade, and the like, and will not be permitted to usurp the province of the jury on matters of fact, of which they are the judges by law.

3. **Criminal law ⚖️485(1)—Opinion evidence in answer to hypothetical question as to whether defendant used drug inadmissible.**

In a prosecution for murder, where the defendant attempted to show mental irresponsibility, induced by smoking marihuana, and after testimony as to the effect of the drug and that defendant the night before the homicide smoked evil-smelling cigarettes, a medical expert was asked, assuming the testimony to be true, would he conclude that the cigarettes were marihuana or not; *held*, such question was improper, and its exclusion not error.

4. **Criminal law ⚖️683(3)—Confessions admissible to show guilt, properly received to rebut theory of insanity.**

Confessions by defendant that he murdered his sister-in-law because of his jealous love for her were admissible as evidence of his guilt, and there was therefore no error in admitting them on rebuttal to controvert the defendant's testimony tending to show mental irresponsibility by reason of the excessive use of marihuana.

5. **Criminal law ⚖️1035(6)—Irregularities in formation of jury waived.**

Under Code Cr. Proc. 1911, art. 22, any error in the manner of the organization of the jury which convicted defendant of murder was waived, where defendant made no objection when, the special venire being exhausted, jurors were summoned from the regular panel in attendance for service in all courts under the interchangeable jury law, and made no objection that they had not been sworn true answers to make, and made no objection to the time, place, or manner in which such jurors were tested as to their qualifications, and no showing of injury to defendant's rights was made in the motion for new trial.

6. **Criminal law ⚖️938(3)—New trial properly denied, where alleged newly discovered evidence was neither newly discovered nor greatly material.**

A new trial was properly denied where the newly discovered evidence on which it was grounded consisted of testimony that defendant had syphilis, such fact being necessarily within his knowledge at the time of the trial, and likewise being not so material to establish his insanity as a defense to the charge of murder as would show the trial court abused his discretion in overruling the motion, in view of the confessions of defendant and the other evidence.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Frank Cadena was convicted of murder, and he appeals. Affirmed.

J. M. Woods and Ed. Haltom, both of San Antonio, for appellant.

D. A. McAskill, Dist. Atty., W. S. Anthony, Asst. Dist. Atty., W. A. Keeling, Atty. Gen., and C. L. Stone, Asst. Atty. Gen., for the State.

LATTIMORE, J.   Appellant was convicted in the district court of Bexar county of murder, and his punishment fixed at death.

[1] Appellant complains of the refusal of the trial court to allow him to ask all the jurors, if they should be taken on the jury and after the evidence was all in there should be in their minds a reasonable doubt as to whether or not defendant was sane or insane, would they be willing to give him the benefit of the doubt and find him insane? As we view the matter this question was so framed as not to present an issue; "a reasonable doubt as to whether or not defendant was sane or insane," presents the matter so as to make it impossible to determine if the doubt inquired of be as to sanity or insanity. The use of the expression "whether or not" further adds to the confusion of the question. It has never been the rule in this state that sanity must appear beyond a reasonable doubt. Hurst v. State, 40 Tex. Cr. R. 387, 46 S. W. 635, 50 S. W. 719; Stanfield v. State, 50 Tex. Cr. R. 69, 94 S. W. 1057; Mc-

Cullough v. State, 50 Tex. Cr. R. 132, 94 S. W. 1056. Sanity is presumed until the contrary is made to appear, and this is one of the issues in which the burden shifts to the accused, who interposes the defense of insanity, and it is held that he must prove it by a preponderance of the testimony. King v. State, 9 Tex. App. 515; Fisher v. State, 30 Tex. App. 509, 18 S. W. 90; Fults v. State, 50 Tex. Cr. R. 503, 98 S. W. 1057; Carlisle v. State (Tex. Cr. App.) 56 S. W. 365.

As we understand this record, an effort was made at interposing the defense of insanity, but .no witness who knew appellant prior to the homicide testified to 'his belief that he was insane at the time of its commission. Appellant's brother and his sister were witnesses in his behalf, and neither was asked relative to their opinion as to his sanity or insanity, or whether he knew it was wrong to kill a human being. It was suggested by the defense that appellant was a marihuana smoker and that from the effects of the use of this drug he had developed a homicidal mania. It was in testimony by Dr. Dorbandt that the use of marihuana in large or excessive quantities would produce a state of mind similar to delirium tremens, and he said that, if appellant was under the influence of said drug at the time of the homicide, in his opinion appellant would not know the right or wrong of the act charged against him. To show that appellant was under the influence of said drug, his sister testified that, during the night preceding the homicide, appellant coughed and complained much and smoked a great deal, and that she thought he smoked Bull Durham tobacco, though she did not know the odor of such tobacco; that what he smoked smelled very bad. Another witness testified that about four days before the killing he spent the night with appellant, and that the latter smoked cigarettes that did not look or smell like good tobacco; that it looked and smelled like marihuana; that about 15 years before appellant had asked this witness to get him some marihuana. Another witness testified that on a date not given he worked with appellant and saw appellant smoking and afterward acting queerly, and that he also saw him throw away a partially smoked cigarette which witness got and examined, and it was marihuana.

[2, 3] In this condition of the record appellant placed on the stand Dr. Berry, who testified that he had observed the effects of marihuana use on persons. The facts attending this homicide were then stated to Dr. Berry, as well as the testimony of appellant's witnesses as above detailed, and he was then asked, assuming said testimony to be true, would he conclude therefrom that the cigarettes smoked by appellant on the night preceding the homicide were marihuana or not. The state objected to this testimony, and to the court's refusal to allow same a bill of exceptions was reserved. We are cited to no authority and know of none that go to the extent of holding such testimony admissible. The doctor as an expert could state what condition of the mind would follow the use of marihuana. The fact of the use of such drug, and the amount and quantity of such use, could be proven by witnesses who knew such facts, but it seems to be the rule that expert opinions must be limited to matters of science, skill, trade, and the like, and will not be allowed to usurp the province of the jury on matters of fact of which they are made the judges by our laws. Hunt v. State, 9 Tex. App. 166.

[4] There is nothing in the proposition that the state was allowed to introduce the confession of appellant as part of its rebuttal testimony, even though the appellant only introduced in his behalf while developing his side of the case, testimony bearing on his use of marihuana as affecting his mental condition. The confession of appellant, made on the day of the homicide, was as follows:

"My name is Frank Cadena. I live at 1112 Saunders avenue. About 3 o'clock this afternoon I was sitting talking to Paulita Jiminez, the girl I shot three times, at the above address, and I understand from the detectives, is dead. I killed her because I was jealous of her and loved her too much. We had not had any fuss or quarrel. This all happened in Bexar county, Tex., this 14th day of April, 1922.
"[Signed]                     Frank Cadena.
"Witnesses:           James M. Crow.
          "Anton Saladino.
          "W. L. Schleshinger."

Some time later appellant made another confession, stating that he had not told the full truth of the matter at first, and he then made the following statement:

"Voluntary statement of Frank Cadena. I, Frank Cadena, being first duly warned by J. A. N. Flores, the person to whom this statement is made, to the effect: First, that I do not have to make any statement at all. Second, that any statement made by me may and will be used in evidence against me in the trial of the case concerning which this confession or statement is made, do hereby voluntarily state as follows: My name is Frank Cadena. I live at 1112 Saunders avenue. On April 14, 1922, about the hour of 3 o'clock p. m., while I was sitting talking with Paulita Jiminez, I pull out a gun and shot her three times. I shot her because I loved her. About a month ago I went to Laredo, Tex., trying to forget her. I remained at Laredo, Tex., for one day. I had been living with her and wanted to forget her, because I could feel that I was giving in, and I was about forgetting my wife. I loved Paulita and I wanted to forget her; first thing I knew I fell in love with her. She was my sister-in-law. That is why I wanted to forget all about her. We had no fuss or quarrel at the time of the shooting. She asked me on several times

not to quit her, as she could not stand it; my wife is at present in the hospital. ·

"[Signed]  Frank Cadena."

Either or both these confessions were entitled to go before the jury, not only as evidence of appellant's guilt of the crime, but as rebutting the theory of a homicide committed in a state of insanity.

The language of the state's attorney, as used in his argument set out in bill of exceptions No. 5, is not deemed by us so foreign to the facts as to be erroneous. The matters stated by appellant in his second bill of exceptions, supra, appears to justify such argument.

There is serious complaint of the fact that, when the sheriff's force were sworn to bring in talesmen to complete the jury after the special venire was exhausted, they went to the room in the courthouse assigned for the use of all jurors summoned for the week for service in all the courts of the county, and there summoned from this assembly of jurors the number ordered by the court to complete the panel in the instant case; said complaint also presenting the further fact that when the jurors so summoned were brought before the judge trying this case for examination touching their service and qualification as jurors herein, they were not then sworn to make true answers by said judge or any one under his direction. It is made to appear that after four jurors had been selected from this number thus summoned, and the full jury thus completed had been sworn, appellant's counsel called the attention of the trial court to the fact just mentioned, and stated that any verdict and judgment rendered against his client would be protested because said jurors had not been sworn to answer questions by the judge of this court. No exception seems to have been reserved, and no further objection was made to the service of said jurors, nor was any affirmative action asked on the part of the trial court. The question was raised in the motion for new trial.

Bexar county is under the operation of the interchangeable jury law, which is chapter 78, Acts Regular Session of Thirty-Fifth Legislature (Vernon's Ann. Civ. St. Supp. 1918, arts. 5158½–5158½i) under which statute jurors for all the courts of the county are sworn and tested as to their qualifications and are sent to an apartment assigned to them in a convenient place, and from this number of jurors men are called to the various court rooms for service in cases when reached. From this assemblage of jurors, as above stated, the officers summoned the men from among whom the four necessary to complete the instant jury were selected. It seems agreed that all of said jurors had been sworn and tested by the judge of another of the district courts of Bexar county than the

one trying this case. Article 674, Vernon's C. C. P., which prescribes the oath to be administered to jurors preliminary to their voir dire examination, has been held merely directory. Murray v. State, 21 Tex. App. 466, 1 S. W. 522; Hudson v. State, 28 Tex. App. 323, 13 S. W. 388; Jackson v. State, 30 Tex. App. 664, 18 S. W. 643. In Jackson v. State, 30 Tex. App. at page 666, 18 S. W. at page 644, appears the following:

"But in case we concede any irregularity or error in the ruling of the court as above complained of, it is not an error of a reversible character, unless it be affirmatively shown by the defendant that injury has inured to him on account of the failure to observe any of the regulations prescribed by the statute for the organization of the jury summoned under the special venire facias. The statutes with regard to the formation of a jury in capital cases are directory, and not mandatory; and where substantial compliance has been observed, no irregularity or failure upon the part of the court to observe a literal compliance with said statutes will be held reversible error, unless injury to the defendant is shown."

[5] No claim is made in this case that appellant was not present and not aware that these men were being tested without having been sworn, by the trial judge of the court below, to make true answers. No objection was made to said jurors being tested in the manner and at the time and place that they were, and not until said jurors had been accepted and sworn to act as jurors in this case was anything said concerning this matter. If any effort was made to get rid of these four jurors it does not appear in the record. No effort was made in the motion for new trial to show that any one of the jurors had answered falsely in the examination given them, or that any of them were hostile to the appellant, or that he suffered any injury from their presence on the jury trying him. It is said, in article 22 of our Code of Criminal Procedure, that the accused may waive any right of his except that of trial by jury in a felony case. It is held in Buie v. State, 1 Tex. App., 452; Lester v. State, 2 Tex. App. 432; Ray v. State, 4 Tex. App. 450; Yanez v. State, 6 Tex. App. 429, 32 Am. Rep. 591; Castanedo v. State, 7 Tex. App. 582; Caldwell v. State, 12 Tex. App. 302; McMahon v. State, 17 Tex. App. 321; and Lowe v. State, 88 Tex. Cr. R. 316, 226 S. W. 674, that the acceptance of a jury by the defendant is a waiver of his right of objection to the manner of its organization. In our opinion the matter complained of is without merit.

[6] Appellant further presents the proposition that he should have been granted a new trial because of newly discovered evidence. The refusal of the motion for new trial is not urged as error in the brief filed for appellant; but, in view of the extreme

penalty inflicted, we have carefully considered this matter also. The motion is contested by the state, and its refusal does not seem to us erroneous. Physicians who examined appellant at the time of his trial said that in their opinion he was then normal; which fact being true, appellant must have been in condition to have informed his counsel of any testimony favorable to his defense which was then within his possession. The facts set up as newly discovered were necessarily within his knowledge, and if he failed to disclose them to his attorneys it was his misfortune. Said new evidence was of the fact that appellant had syphilis. Not only was this not newly discovered evidence within the contemplation of our law, but we do not think it of that materiality which would call for the granting of a new trial, and which would make it appear that the trial judge had abused his discretion in the matter. The confessions of appellant seem to us to be so cogent upon the question of his understanding of the nature of the crime he was committing as that, when coupled with the testimony given on this point, seem to entirely support the proposition that he was sane at the time. Appellant's wife had been in the hospital for some time, and the young woman whom he shot was his wife's sister. In his confessions he states that he was in love with her, and that this fact so stirred him up as to lead him to kill her.

Finding no error in the record, an affirmance will be ordered.

### On Motion for Rehearing.

HAWKINS, J. Our former opinion is attacked upon the ground that we were in error in holding not reversible the alleged irregularity in selecting the four jurors summoned by the sheriff. On account of the severe penalty inflicted we have again examined the question. We are confirmed in the views heretofore expressed. It would be profitless to write again at length. The record presents no facts from which we could with reason apprehend that injury may have resulted to appellant. We think this one of the instances where accused will be held to have waived an irregularity in the selection of a jury when no objection is made at such a time that the matter complained of might have been corrected. Where no effort is made to show injury resulting from such irregularity, we think it beyond our province to presume injury under such circumstances. Very much the same question was considered in the recent case of West et al. v. State (Tex. Cr. App.) 247 S. W. 534, where it was omitted to administer the oath to the sheriff when directed to summon additional jurors.

The motion for rehearing is overruled.