JAMES PAPPAS V. THE STATE.

No. 17127. Delivered January 23, 1935.
Reported in 78 S. W. (2d) 619.

The opinion states the case.

*Jno. R. Francis*, of Houston, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment in substance that appellant, with malice aforethought, killed Bess Burt by shooting her with a pistol.

The homicide occurred January 6, 1934, and the indictment was returned five days later. The trial began February 5, 1934.

Appellant was too poor to employ counsel. Approximately two weeks before the trial the trial court appointed two attorneys of the Houston Bar to represent appellant. When the case was called for trial appellant's attorneys filed a first application for a continuance based upon the ground that they had not had sufficient time to prepare for trial. In the alternative, they asked that the case be postponed to a later date in the term. It was alleged in the motion that appellant refused to talk to counsel about his case; that about two days before trial appellant stated to counsel that while a boy he had received a head wound; that he had suffered lapse of memory at intervals during the past five years; that he had some acquaintances in Galveston; that he had been informed by them that during the times he had suffered from lapse of memory he acted in a wild and crazy manner, and that his acts were those of an insane man. The application was to the further effect that the conversation mentioned led counsel to believe that appellant was mentally unbalanced; that further time was necessary in order to bring before the court the witnesses who would testify to the effect that appellant was of unsound mind.

The court overruled the application. Appellant testified in his own behalf. It is unnecessary to discuss his testimony other than to say that it was wild, incoherent and unreasonable. It might be added that counsel for appellant made affidavits that they had not known what appellant's version of the transaction would be until he had taken the witness stand and testified. In the course of his testimony appellant stated that he had been confined in a government insane hospital on several occasions. He said: "The government kept me where the crazy people were three or four times, several times. I don't know what happened to cause that when I was in the crazy hospital. I don't recall anything that happened in the work that sent me there. * * * When I went to the hospital sometimes I would stay a month or months and a half, two or three months. It was the insane hospital where they carried me." The State called three physicians who qualified as experts on mental diseases and who testified that they had examined appellant and were of the opinion that he was sane. The court based a charge on insanity solely upon appellant's testimony, as no witness other than appellant gave any testimony indicating that appellant was of unsound mind.

Attached to the motion for a new trial were the affidavits of several witnesses to the effect that they had known appellant in the City of Galveston for several years, had associated

with him and were of the opinion that he was insane and mentally irresponsible. In these affidavits some of the peculiarities of appellant were set forth. One of the affiants stated that he had lived in the community in Greece where appellant was born and raised, and knew appellant's parents, and that appellant's mother was insane. In short, the alleged newly discovered testimony, if believed by a jury upon another trial, necessarily would lead to the conclusion that appellant had been insane for a number of years. Some of the witnesses whose affidavits were appended to the motion for new trial appear to have been present during appellant's trial but were not placed upon the witness stand. They had stated to appellant's counsel that they knew nothing about the case, and asked to be excused. The State controverted the motion on the ground that sufficient diligence was not shown and on the further ground that appellant was not insane. The same physicians testifying during the trial were recalled upon the hearing of the motion and reiterated their opinion that appellant was sane. Other witnesses who had associated with appellant were called by the State and expressed the opinion that appellant was sane.

We are constrained to hold that in its entirety the record shows that appellant's counsel used reasonable diligence to obtain testimony touching appellant's mental condition. In the beginning they asked for a postponement in order that they might have time to prepare for trial on the question of appellant's mental capacity. They were not in the attitude of waiting until after the trial to raise the question. They apprised the court fully that they believed from a conversation had with appellant two days before the trial that he was mentally unbalanced and insane, and requested the court to give them an opportunity to investigate the matter in order that they might bring forward witnesses who would testify touching appellant's mental capacity. It is true that appellant used no diligence to produce this testimony. If in fact he is insane it could not be expected that he would use diligence and the law would not exact it of him. Schuessler v. State, 19 Texas App., 472. In Williams v. State, 66 S. W. (2d) 306, this court, speaking through Judge Hawkins, used language as follows: "As has been said many times, if accused is of unsound mind, the law will not and should not hold him to the same diligence as in cases where insanity is not an issue, and in that respect the rule has been relaxed. Many cases have been examined in the consideration of the motion for rehearing. Most

of them appear to fall in certain well-defined groups; viz: (a) Where some evidence was introduced on the trial which tended to show that accused was of unsound mind, and no diligence on the part of accused towards newly discovered evidence was shown, but the attorney who represented him at the trial is shown to have used reasonable diligence. Illustrative, see Schuessler v. State, 19 Texas App., 472; Rowden v. State, 112 Texas Crim. Rep., 655, 18 S. W. (2d) 170. (b) Where accused was not represented by counsel on his trial, and the showing of insanity was first made on motion for new trial predicated upon newly discovered evidence. Illustrative, see George v. State, 114 Texas Crim. Rep., 458, 26 S. W. (2d) 249; Warren v. State, 114 Texas Crim. Rep., 207, 24 S. W. (2d) 1090. (c) Where the facts incident to the offense as developed on the trial strongly suggest that accused was of unsound mind, and the evidence produced on motion for new trial is so cogent on the issue of insanity as to almost conclusively establish it. Illustrative, see Horhouse v. State (Texas Crim. App.), 50 S. W. 361; Walker v. State, 86 Texas Crim. Rep., 441, 216 S. W., 1085; Lindsey v. State, 97 Texas Crim. Rep., 300, 260 S. W., 862; Hill v. State (Texas Crim. App.), 53 S. W., 845. The case of Rich v. State, 115 Texas Crim. Rep., 386, 28 S. W. (2d) 802; falls partly in both class (a) and (c)."

When cases before this court have fallen under the classifications set forth in Williams v. State, supra, reversals have followed for failure to grant new trials on the ground of newly discovered evidence touching insanity. The instant case appears to fall in class (a), and presents a situation very similar to that reflected in the opinion in Schuessler v. State, supra, from which we quote as follows:

"We are of the opinion that the court erred in refusing to grant the defendant's motion for a new trial. There was some testimony adduced on the trial which tended to show that the defendant, at the time he is charged with having committed the crime, was of unsound mind, and irresponsible criminally for his acts. It is shown by the affidavit of his counsel that he was averse to and protested against interposing the defense of insanity, and would give no information which would enable them to ascertain the facts as to his mental capacity. Nor could they obtain such information from even the defendant's father, he also being averse to interposing such defense. It is shown by affidavits that, after the defendant's conviction, very material evidence strongly tending to establish the defense of insanity came to the knowledge of defendant's counsel.

"It is true that no diligence had been used by the defendant to discover and produce this testimony. On the contrary, his desire was that such testimony should not be resorted to. If, in fact, the defendant is insane, it could not be expected that he would use diligence to obtain testimony, and the law would not exact it of him. His counsel appear to have used reasonable diligence to obtain testimony, and did obtain some as to his mental condition, and show good reason why they did not produce the testimony which they show can be produced on another trial. This newly-discovered evidence is certainly material, and calculated, we think, to change the result on another trial. It appears to us probable that the defendant is not a responsible person, and we think the law and justice demand that he should have a new trial. Wherefore the judgment is reversed and the cause is remanded."

Giving effect to the announcement of the decisions, we are constrained to order a reversal of the judgment.

The judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.