## JOHNNIE ELWOOD GORDON v. STATE

No. 27,441. March 30, 1955
Rehearing Denied May 18, 1955

Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) June 1, 1955

*Conway* and *Navarro*, by *Walter Conway*, and *Dent, Ford, King & Wickliff*, by *Gloria K. Bradford* (on appeal) all of Houston, for appellant.

*Dan Walton*, District Attorney, *Eugene Brady*, Assistant

District Attorney, Houston, and *Leon Douglas*, State's Attorney, Austin, for the state.

DICE, Judge.

Appellant was convicted of the offense of rape and his punishment fixed at death.

The testimony shows that the prosecutrix was a married woman who worked at a tavern in the city of Houston, and on the night of July 29, 1954, she got off from work around 10:10 o'clock and started walking home.

She testified that as she was walking on Frio Street some 150 feet from her home, a Negro man came up from behind, grabbed her by the arm, turned her around, choked her and threw her down in some weeds and raped her. In describing the attack, the prosecutrix testified that the Negro man told her, "If you scream, you s - o - b, I will kill you," and during the attack he tore her underclothes and was repeatedly choking her; that she blacked out three times; that when she regained consciousness the first two times the Negro man had his private in her privates and was having sexual intercourse with her; that when she regained consciousness the last time her assailant was gone, whereupon she got up, began hollering and screaming and went to her home. She testified that she identified the appellant at a police line-up some four days later as her assailant, and while testifying as a witness she positively identified him as the man who had raped her.

When the prosecutrix arrived at her home she reported to her husband and his parents that a tall Negro had raped her. The evidence shows that at such time her clothes were wet and torn, that she had marks on her throat and a scratch on one arm and blood on her left leg.

The witness, Robert A. McClendon, testified that around 10:30 o'clock on the night in question, while he was driving on Frio Street, he saw the appellant running towards his car; that after he had driven some 50 feet he saw a lady who was screaming and crawling on her hands and knees out of some weeds; that he then turned around and pursued the appellant who disappeared around some houses. Thereafter the witness McClendon met the husband of the prosecutrix who at the time was searching the neighborhood for his wife's assailant; the husband got into the witness' car, and as the two continued

their search they saw appellant standing at a bus stop some five blocks from the scene of the crime. The prosecutrix' husband, upon being informed by McClendon that appellant was the Negro man he had seen, got out of the car, and in an attempt to cut appellant's throat, cut him on the arm. Thereupon appellant ran and disappeared.

William P. Hemphill, a mortician, testified that about 1:45 o'clock on the morning of July 30th, appellant called him by telephone and said that he had been in a fight; that he was bleeding and asked the witness to come and pick him up at a store on the LaPorte Road. The witness drove to the place and appellant came out from behind a hedge-row or bushes at the rear of the store, and at the time was bleeding from a stab wound on his left forearm. Hemphill testified that he rendered first-aid to the appellant and gave him a change of clothes; that some two days later he took the appellant, at his request, to the home of a man by the name of Bell in San Augustine, Texas.

Appellant was subsequently arrested in San Augustine and returned to Houston, and upon being questioned by the officers, signed a written statement which was introduced in evidence by the state.

In such statement appellant stated in part as follows:

"Last Thursday, July 29, 1954, I got off from work at 9:00 P.M. *** When I got off from work I came downtown on Prairie Street and got me something to eat. I then went and caught a Harrisburg bus and rode it to Broadway and LaPorte Road. I went out there to have a good time. I got off the bus about 10:00 or 10:15 P.M. I went to three places looking for two girls that I knew. I couldn't find them and was on my way back down on Broadway to catch the bus. I was running down Frio Street to catch a bus when I saw a woman walking down Frio Street. I ran up to this woman and grabbed her and we fell into the ditch. I put my hand under her dress and tore the crotch from her pants. She was trying to scream and I told her not to. I put my penis part of the way in her privates. I reached a climax and took my penis out of her. I then ran down on Manchester Street and stopped at a bus stop. *** I saw a white man come across the street and get out and run toward the bus as though he was going to catch it. When this man got to where I was I saw that he had a knife and he tried to stab me in the body. I stepped to one side and the knife struck me in the left arm about half-

way between the wrist and the elbow. When this man cut me I knew that it was about the woman that I had grabbed on Frio Street. I got scared and ran."

Appellant did not testify or offer any witnesses in his behalf.

By Bill of Exception No. 1 appellant complains of certain jury argument made by state's counsel in which the witness Hemphill was referred to as "that black Negro," and of the action of the court in refusing to declare a mistrial following appellant's objections to the argument.

The bill, as qualified, reflects that the assistant district attorney, in his argument to the jury, at the beginning of the discussion of the testimony of the witness Hemphill, stated, "The next witness for the State, one of the best witnesses other than the prosecutrix was *** (addressing his co-counsel, another assistant district attorney) *** what was his name? *** Well, it makes no difference,—you remember him, the black Negro who testified ***."

At such time appellant's counsel interrupted the state's attorney with the objection that such argument was prejudicial, inflammatory and injected the racial issue into the trial of the case, whereupon the state's attorney said: "If the Court please, I did not mean any disparagement of the witness whatsoever. I am sorry I cannot remember his name. The gentlemen of the jury saw him and observed him and I would say undoubtedly he was a black Negro." Whereupon appellant's counsel further objected and moved the court to declare a mistrial, which motion was by the court overruled.

The trial court in his qualification of the bill certifies that the witness Hemphill was the only Negro who was offered as a witness upon the trial and that he was extremely dark complexioned.

It is the appellant's contention that the reference to the witness as "that black Negro" was an appeal to race prejudice, and therefore prejudicial to him, and further, that it was an effort to convince the jury that where a Negro testified against a Negro that, in itself, entitled the witness to more credibility and that the trial court should have declared a mistrial.

We do not so construe the reference by state's counsel.

Appellant relies upon Allison v. State, 157 Texas Cr. Rep. 200, 248 S.W. 2d 147. A very material distinction exists between the case at bar and the Allison case. In the Allison case we said, "The implication was clear that State's counsel sought to condemn as a class all testimony coming from members of the colored race." Quite the converse is here presented. The prosecutor was praising his own witness, who happened to be a colored man and whose name he had forgotten. Praise is not condemnation, nor can it be construed as a discrimination.

Bills Nos. 2 and 3 relate to the action of the trial court in overruling appellant's amended motion for new trial.

The record shows that appellant sought a new trial upon the ground of newly discovered evidence, and in connection therewith he alleged and supported by his affidavit that the confession introduced in evidence was secured from him without warning and through threats, fraud and deceit; that during the trial appellant was afraid to inform his attorneys that the confession was so procured, but since the trial he had recovered from such fear and had so informed his attorneys upon their advice that he would not be injured if such evidence were produced in court. The trial court refused to hear testimony in support of this alleged ground for new trial.

The trial court did not err in refusing to hear appellant's testimony as such proffered testimony was not newly discovered evidence. Appellant, in the motion, alleges that such facts were within his knowledge during the trial of the case. Therefore, the same could not be newly discovered evidence.

In Benavidez v. State, 143 Texas Cr. R. 481, 154 S.W. 2d 260, and McCutcheon v. State, 159 Texas Cr. R. 61, 261 S.W. 2d 329, it was held that testimony of an accused after conviction that a confession was involuntary was not newly discovered evidence and did not constitute a ground for a new trial.

Appellant next alleged as a ground for a new trial that the court erred in overruling his motion for a continuance. As ground for the continuance the motion alleged that one of his attorneys, Honorable Walter Conway, was unable to participate in the trial of the case because of being engaged in the trial of a case in the Federal court; that his other attorney, Honorable Peter S. Navarro, was not fully acquainted with the facts and could not properly try the case, and that under such conditions appellant could not receive a fair and impartial trial.

The record reflects that appellant's attorney, Walter Conway, actually appeared and conducted appellant's defense throughout the trial; that appellant offered no evidence on the hearing of the amended motion for new trial to support the allegations that the court erred in overruling the motion for a continuance. On the contrary, the bill of exception shows that appellant's counsel declined to offer any evidence in support of this alleged ground for a new trial. Under the record no error is shown by reason of the overruling of the motion for a continuance.

We find the evidence sufficient to support the conviction, and no reversible error appearing in the record, the judgment is affirmed.

Oponion approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

We have again examined this entire record, and remain convinced that a correct conclusion was reached originally.

We are unable to agree with appellant that the reference to the state's witness as "a black *negro*" had the effect of appealing to racial discrimination or race prejudice.

As we view this record, the reference was made for the purpose of identifying the witness whose name counsel for the state did not, at that time, recall.

Appellant's motion for rehearing is overruled.