Clark R. PURCELL, Appellant,

v.

STATE of Texas, Appellee.

No. 29553.

Court of Criminal Appeals of Texas.

May 7, 1958.

Rehearing Denied Nov. 5, 1958.

On Second Motion for Rehearing
March 25, 1959.

Cofer & Cofer, by John D. Cofer, Austin, Tom Gambrell, Lockhart, E. B. Fuller, Austin, for appellant.

Wallace T. Barber, Dist. Atty., San Marcos, and Leon B. Douglas, State's Atty., Austin, for the State.

Leon Jaworski, Houston, filed brief amici curiae.

BELCHER, Commissioner.

The conviction is for murder with malice; the punishment, death.

The testimony of the state shows that the appellant committed a cruel and brutal murder by beating Mrs. W. T. Fortner, the mother of his deceased wife, on the face and head with a vase. Appellant's voluntary written statement made and signed on the day of the killing was introduced in evidence by the state without objection and it shows an atrocious killing without justification.

Appellant did not testify but called numerous witnesses including a medical doctor and a psychiatrist whose testimony supports his plea of insanity at the time of the offense, which was his only defense.

The jury resolved the issue of insanity against the appellant and we find the evidence sufficient to support their verdict.

By formal Bill of Execption No. 1, appellant complains of the court's action in overruling his first application for a continuance. The application alleges that he had mental irregularities over a period of 15 or 20 years before March 4, 1957, which at various intervals passed into insanity and he did not know the difference between right and wrong and was incapable of appreciating the nature, quality or consequences, of his acts. To support the above allegations he further alleged that while he was in the service and stationed at Bergstrom Air Base his mind got beyond his control and he "ripped off his uniform and stomped it on the floor", that he was then insane and could not distinguish between right and wrong, that some of his fellow officers witnessed the act and observed his mental condition at the time which is material to his defense, and their whereabouts were unknown but within a few days their addresses could be ascertained from the Air Reserve Record Center. He further stated that there was a reasonable probability that one or more were in Texas; and that subpoenas would be issued for them.

The motion for continuance also alleged that while appellant was attending a Veteran's Trade School at Harwood, Texas, in 1954, 1955, and 1956, with 20 or 25 other students he had mental lapses or spells and became insane or near insane; that all of said students then lived in Texas and if he was allowed a reasonable time he could locate them and have subpoenas issued for their attendance and that their testimony was material.

It was further alleged that Santiago Pasquero, a resident of Caldwell County, saw him experience a mental spell or crack-up and act as an insane person in 1956, that he was temporarily out of the state but would probably return in a few weeks as he customarily did; that his testimony was material to appellant's defense.

Appellant states in the application for a continuance that he employed an attorney on March 7, who immediately went to work on his case.

The state controverted the application for a continuance by a sworn denial and answer.

Bill of Exception No. 1 also complains of his inability to obtain other evidence because of the refusal of his application for a continuance. These other matters were not alleged in the application for a continuance, but were alleged in the First Amended Motion for a new trial and will be considered in connection with the Bills of Exception complaining of the overruling of said motion. These other matters were not relied upon for a continuance at the time the application was presented to, considered and refused by the trial court.

There was no testimony or affidavits offered in support of the application for a continuance.

The record does not disclose an application for the issuance of subpoenas or that

subpoenas had been issued for any of the persons named or described in the motion for a continuance.

N. H. Gottwald, teacher in the Veteran's Trade School, testified on the main trial.

There appears no abuse of discretion by the trial court in refusing the application for continuance.

Appellant strenuously insists that the trial court erred in overruling his motion for a new trial. In the motion appellant sets up and relies on what he claims to be newly discovered evidence.

The state controverted appellant's amended motion for a new trial and offered evidence in rebuttal.

By Bill of Exception 2a, appellant presents as newly discovered evidence the records showing the findings of the Medical Board of the Air Force at Bergstrom A. F. B., made on April 8, 1952, recommending that he be relieved from active duty. The Board found "generalized arteriosclerosis with probable premature senility", "deterioration of mental facilities and physical stamina," and "ulcer duodenum." It further found that he was physically qualified for return to active duty but recommended against his return because of "indications that the officer is unlikely to render effective service upon return to duty by reason of a possible early recurrence or aggravation of incapacitating symptoms of a result of conditions peculiar to the military service." Appellant's release was approved by his commanding officer because of his failure of health and the age factor.

By Bill of Exception 2b, appellant urges error because of the court's refusal to grant his motion for a new trial on the ground of the newly discovered evidence of Dr. John D. Fisher. Dr. Fisher's affidavit attached to the motion recites that he was a member of the medical board which recommended appellant's separation from the service, and his statement in the affidavit corroborates those shown by the findings

of the board set out in our summary of Bill of Exception No. 2a. The affidavit also recites that he next saw the appellant on April 18, 1957, in Lockhart, and he found essentially the same evidence of premature senility as found by the medical board in April, 1952, and noted no marked progression of mental deterioration, and that his mental condition was virtually the same. The affidavit further recites, in reference to the 1957 examination:

"During the examination Purcell did not exhibit any failure of memory, except for the events which ensued on March 4, 1957, between the time he wrestled with Mrs. Fortner, and the time he returned to the house to call the doctor and the sheriff. We know, in medicine, that such a period of amnesia may occur, and may be of short duration, in the epileptic, in hysteria, as a result of brain concussion, or as a result of direct destruction of the nervous system."

\*   \*   \*   \*   \*   \*

"It is my impression that Purcell, with senile arteriosclerotic cerebral changes, may have had a period of amnesia during which time he would not have known the nature and quality of his action, nor would have possessed the ability to distinguish right from wrong; and in my opinion it is reasonably probable that Clark Purcell suffered from such a condition at the time of the homicide with which he is charged on the early morning of March 4, 1957."

In Bill of Exception No. 2c, appellant complains of the refusal of his motion for a new trial because of the newly discovered testimony of Dr. Wade. Dr. Wade's affidavit recites that he is a medical doctor, specializing in psychiatry, and testified on the main trial of the appellant. He states in the affidavit that he made a psychiatric examination of appellant on March 4, 1957, which revealed "that both rigidity of personality and a paranoid personality dis-

order were present. I felt that he had a mild degree of arteriosclerosis, and in my opinion his mild arteriosclerosis had intensified his paranoid state." \* \* \* "It is my opinion that Clark Purcell's paranoid personality disorder and his mild arteriosclerosis would make him less flexible and more prone to give vent to his feelings. It is true that homicidal tendencies are characteristic of paranoia." It further recites that he made a written report of his findings to the district attorney, before he testified on the main trial, but it was shown that such report was not known to the appellant or his attorney until after the trial.

Appellant in his amended motion for a new trial for the first time alleged that he desired to obtain the records of the Air Force showing the findings of the medical board before his separation from the service and also the testimony of the members of the Board.

There was no showing on the hearing of the motion for a new trial that the appellant had ascertained the name of any person who saw him "stomp" his uniform while he was in the service at Bergstrom Air Force Base.

The witness Harrell, called by the appellant on the main trial, testified that he was present when the appellant and the deceased visited in his father and mother's home about 5 p. m. on March 3, (the evening before the killing at 2:30 a. m. on March 4); and that both were pleasant and friendly at the time. No inquiry was made of him concerning the condition of appellant's mind at the time of the visit.

Dr. John E. Talley, a medical doctor and psychiatrist, specializing in psychiatry, called as a witness by the appellant, testified that on March 16, 1957, he determined the nature of the offense charged against the appellant, conferred with members of his family, and examined him, and then expressed the opinion that he was "legally sane" at the time of the examination and further expressed the opinion that the ap-

pellant at the time of the commission of the offense (March 4) was insane. On cross-examination, Dr. Talley testified "that he (appellant) regained his sanity within a matter of a couple of hours at least" from the time of the commission of the offense.

The record shows that appellant's voluntary written statement was made and signed at 11 a. m., March 4, about 9 hours after the killing, and no objection was made to its introduction in evidence; and that appellant introduced in evidence the portion of his statement that the state declined to offer.

The record in this case shows that the appellant in 1952 appeared in person before the Medical Board of the Air Force at Bergstrom Field, that he concurred in its findings and later asked to be released from the service.

The application relied on for a continuance did not allege as grounds that the appellant's mental condition was such that he was unable to prepare his case for trial or make a rational defense or properly confer with his attorneys. There is no contention that appellant was insane at the time of his trial, or that he was incapable of preparing a rational defense.

Appellant takes the sole position that he did not know the difference between right and wrong and did not realize the nature and consequences of his acts at the very time of the homicide. In the absence of any other contention there appears no issue as to appellant's sanity from shortly after the homicide until the present. Therefore, we must assume that the appellant had knowledge of and was in possession of all the facts which he acquired at the time he appeared before the medical board in 1952, concurred in its findings and asked for a release from the service.

■ Art. 753, Vernon's Annotated Code of Criminal Procedure, provides:

"New trials, in cases of felony, shall be granted for the following causes, and for no other: \* \* \*

"6. Where. new testimony material to the defendant has been discovered since the trial. A motion for a new trial on this ground shall be governed by the rules which regulate civil suits."

By "new testimony" is meant proof of some new and material fact in the case which has come to light since the trial. 1 Branch, 2d Ed., p. 249, Sec. 214.

1 Branch, 2d Ed., p. 254, Sec. 220, reads in part:

"Where it appears that defendant or his counsel knew of the alleged new testimony at or before the trial, or that defendant knew that the proposed new witness was present, when the transaction occurred, or where the alleged new testimony is of such a character as that defendant must necessarily have known of its existence prior to the trial, and the trial court in the exercise of its sound discretion has refused a new trial, the judgment will not be reversed to permit him to take advantage of his own negligence and obtain a new trial to get testimony which he should and could have had at the trial." (Citing numerous cases.)

In Cadena v. State, 94 Tex.Cr.R. 436, 251 S.W. 225, a death penalty case, we held that the accused's claim that he had syphilis which would bear on his defense of insanity could not be newly discovered evidence because it was within his knowledge before the trial.

In another death penalty case we held that the alleged mistreatment of the accused by officers in Mexico and Texas was not newly discovered evidence as would entitle accused to a new trial where he had an attorney and alleged misconduct occurred before the trial. Benavidez v. State, 143 Tex.Cr.R. 481, 154 S.W.2d 260. Other death penalty cases on the same question include: McCutcheon v. State, 159 Tex.Cr. R. 61, 261 S.W.2d 329, and Gordon v. State, 161 Tex.Cr.R. 594, 280 S.W.2d 267.

In Fogel v. United States, 335 U.S. 865, 69 S.Ct. 136, 93 L.Ed. 411, the conviction was for failing to register for the selective service. Records of the Immigration Department showing his age when he entered the United States, which would show him to be over the registration age, was of a fact peculiarly within the knowledge of the accused, and could not have been newly discovered evidence. See also, Rivers v. State, Tex.Cr.App., 48 S.W. 172; Aven v. State, 95 Tex.Cr.R. 155, 253 S.W. 521; Art. 753, Vernon's Ann.C.C.P., notes 111–112; 13 Tex.Digest, Criminal Law,

Where insanity is a defense, the requirements of diligence in the discovery of newly discovered evidence are not as strict as in other cases. 31 Tex.Juris, p. 271, Sec. 72; Schuessler v. State, 19 Tex. App. 472; Skotnik v. State, 119 Tex.Cr.R. 312, 43 S.W.2d 602; Pappas v. State, 127 Tex.Cr.R. 570, 78 S.W.2d 619. In those cases there was a general plea of insanity. Appellant in the instant case contends only that he was insane at the very time of the commission of the offense, and at various intervals prior thereto. The general rule as to diligence is applicable in the case before us because there is nothing to indicate appellant was insane at the time of his trial or was mentally incapable of assisting and cooperating with his attorneys in. preparation for trial.

By Bills of Exception Nos. 2f, 2g, and 2h, appellant claims that the court erred in refusing to grant his motion for a new trial because of the newly discovered testimony of John D. Simmons, Mrs. C. E. Jones, and Lon Jones. The affidavit of each is attached to the motion. They show that these persons reside in Caldwell County where the appellant resides; that they had known him for many years; had had many occasions to observe his actions and conduct and at times it seemed to them that he had lost his mind; that he was not normal mentally; something was wrong with his mind, and when he had spells he did not know what he was doing.

■ Neither of these affiants expressed the opinion based on their acquaintance with and observations of the appellant that he was not capable of understanding right from wrong or that he was insane at any time. These are the tests accepted in determining an accused's accountability for crime under the law. McCune v. State, 156 Tex.Cr.R. 207, 240 S.W.2d 305; Linney v. State, 152 Tex.Cr.R. 560, 216 S.W.2d 209.

■ Further, the appellant, in his amended motion for a new trial, claims newly discovered testimony of the state's witness, Dr. Wade, in "that the withholding by the witness, Dr. Wade, with the knowledge of the District Attorney, of his testimony, to the effect that defendant was suffering from a mental disease, and was a 'paranoid personality' and was suffering from a 'paranoid state' with 'homicidal tendencies' intensified by a condition of 'arteriosclerosis', denied the defendant due process and equal protection of the law."

The record shows that when Dr. Wade testified on the main trial, he responded to all questions asked both on direct and cross examination. On the motion for new trial Dr. Wade testified that he then had not testified to anything contradictory to that to which he had testified on the main trial, but that he had given additional facts in his affidavit and on the hearing of the motion; that he was not asked about the additional facts before or on the main trial. He also testified that he had not changed his opinion of appellant's sanity as expressed on the main trial.

The trial court certified that "the Defendant's brother, Stuart M. Purcell, who sat at Defendant's counsel table during the entire trial except when he was testifying, had talked with Dr. Wade at least several days prior to the date of the trial and said brother knew that Dr. Wade had examined the defendant (pp. 88 & 236, S/F), and the said defendant, his attorney or his brother, if they had so desired, could have discussed all the results of his examination with Dr. Wade prior to the trial."

Therefore, it appears that the only reason for the failure to ascertain the additional matters which it is now shown that Dr. Wade would testify was that he was not asked about them. These matters cannot be set up as newly discovered testimony obtained since the trial because under the record before us they could have been ascertained before the conclusion of the main trial by the exercise of reasonable diligence. 31 Tex.Juris., p. 277, Sec. 78; 1 Branch, 2d Ed., p. 260, Sec. 226; Nicholson v. State, 107 Tex.Cr.R. 631, 298 S.W. 436; Young v. State, 108 Tex.Cr.R. 532, 1 S.W.2d 883; 13 Tex.Digest, Criminal Law,

We conclude that the trial court did not abuse his discretion in overruling appellant's amended motion for a new trial.

Finding no reversible error, the judgment of the trial court is affirmed.

Opinion approved by the court.

On Appellant's Motion for Rehearing

WOODLEY, Judge.

Appellant's able and earnest counsel urge upon us that the overruling of his motion for new trial based upon the failure to grant his motion for continuance and upon newly discovered evidence was for one or both reasons error which should result in reversal of the conviction.

These contentions received careful attention on original submission and were, we hold, properly disposed of in our original opinion.

■ We again direct attention to the fact that, insofar as the time of trial was concerned, appellant was, like any other defendant, presumptively sane. In addition to this, all of the evidence, including that of witnesses for the defense, was to the effect that he was sane at the time of trial.

Under these facts the cases cited which deal with insanity rather than temporary insanity are not deemed applicable. For

example, the quotation from Pappas v. State, 127 Tex.Cr.R. 570, 78 S.W.2d 619, 620, "It is true that appellant used no diligence to produce this testimony. If in fact he is insane, it could not be expected that he would use diligence and the law would not exact it of him."

This reasoning could hardly apply here for the claim of insanity was limited to the time of the homicide and appellant's witness testified that he (appellant) regained his sanity within two hours thereafter. There was no evidence showing or tending to show that appellant was insane after that two hour period following the homicide.

As we understand this record, appellant sought, by his plea of temporary insanity, an acquittal by which, having recovered his sanity within a few minutes or hours after the homicide, he would go free.

To support this defense he desired to obtain witnesses who, on prior occasions, had seen him act for other short intervals like an insane person. "There was no hint that any possible medical evidence as to sanity would be revealed by any records." Court's qualification, par. 5, Transcript p. 68.

That there be no doubt as to the correctness of the court's qualification, the motion for continuance is quoted in the footnote.[1]

1. "The State of Texas vs. Clark R. Purcell No. 6652.

In The District Court of Caldwell County, Texas March Term A.D. 1957

"To the Honorable John R. Fuchs, Judge of said Court:—

"I.

"Comes now the defendant in the above styled and numbered cause and says that a continuance of this cause should be by the Court granted at this time, and hereby requests such continuance, as below set-out and for the reasons below shown.

"II.

"The indictment in this cause alleged that the felony for which this defendant is indicted was committed 'on or about the 4th day of March, A.D. 1957'. The Grand Jury that indicted this defendant was in session on March 4th, 1957, at Lockhart, Texas, and immediately investigated said alleged felony and that day or the next day indicted this defendant therefor. It was Thursday, March 7th, 1957, before defendant succeeded in employing an attorney to represent him herein, which attorney immediately went to work on the case and was notified that this cause was set for trial March 18th, 1957, by the proper authorities. In the too limited period of time I have had to work on the matter I ascertained the defendant served in 3 wars, Worldwide War I, World War II, the Korean War.

"III.

"This defendant says that mental irregularities set in on him 15 or 20 years prior to March 4th, 1957, which at various intervals passed into insanity leaving his mind incapable of distinguishing between the rightfulness and wrongfulness thereof, and incapable of appreciating the nature of his acts and the results thereof.

"IV.

"Defendant says that after the Korean War he remained in the Reserve Officers Air Force and his last place of service was Bergstrom Air Base near Austin, Travis County, Texas, where he was discharged effective May 20, 1955, at which time his mind became up-set, disturbed and beyond the power of control and he 'ripped off his uniform and stomped it on the floor', not being conscious of such acts at the time, same not even registering on his mind, and during which defendant was insane and unable to distinguish between the right and wrong thereof, and not understanding the nature of such acts or the consequences thereof; and it later in the day when others being discharged at the time told him of the event and then defendant became mentally conscious of what he had done to the uniform he had honorably worn through 3 Wars and a later period of U. S. Government Service in the Air Force Reserve prior to said final discharge. Defendant says that some of those who witnessed said uniform act were fellow Air Force Reserve Officers who resided in Texas, and he believes now reside in Texas and can be located within a reasonable period of time and under subpoenas of this Court can be brought here to testify in defendant's behalf as to such acts about the uniform and defendant's mental condition at the time; that such records, names and places of residence of said desired witnesses can not now be obtained from the offices in said Bergstrom Field because

But after the verdict and now he complains that he should have another trial wherein he might prove insanity, evidenced by recurring acts and medical testimony (including Air Force records) showing mental deterioration and disease.

they have been forwarded to the Central Headquarters of the Air Reserve Records Center at Denver, Colorado, and defendant's attorney has obtained proper government forms for ascertaining such facts, filled them out, defendant has properly signed same with fingerprints and same were on March 13, 1957, airmailed through the Lockhart Post Office in envelope properly addressed with the required postage attached to cause same to be delivered speedily to said Central Headquarters, and defendant verily believes and expects that within a few days the names and addresses of said witnesses for defendant will be in possession of defendant's attorney in Lockhart, Texas, to where he can forthwith make proper application to the Clerk of this Court and have subpoenas issued which will result in said witnesses attending this trial for the purposes aforesaid. This defendant says such testimony from said witnesses to said 'uniform stomping act' and mental condition at the time as above shown is material to defendant's defense since defendant's mind was in the same condition and state at the time he is alleged to have committed the felony for which he stands indicted in this Cause and is now on trial for. Defendant says there is more than a reasonable probability that one or more of such witnesses can be located in Texas, if time is permitted, and his attorney has been pursuing this matter with all reasonable speed to procure such information since he was employed herein and since the setting of this case, and especially when taken in connection with the other things and matters said attorney has had to look into and attended to in preparation for this trial within the limited days above shown.

"V.

"Defendant says the above incident parallels one that occurred after his discharge from World War I about February of 1919 which happened in Nueces County, Texas, in September of 1919 when a severe storm drove the gulf or bay water inland and covered the tract of land on which defendant and his brother were then residing, and in water about 15 inches deep at their said home defendant became provoked, attacked his brother and with his hands around his brother's throat was choking him to death and in the struggle said brother got defendant's head under the water causing defendant to release the hold. Defendant says such attack resulted from no sufficient reason and would not have occurred had not defendant at the time been insane, incapable mentally of distinguishing between the right from the wrong of the act and being mentally incapable of realizing the nature of the act or the consequences that logically would result therefrom.

"VI.

"Defendant further says in addition to major mental up-sets which led into insanity that between such attacks at times he appeared normal, was able to attend to business and talk intelligently with friends, but at other times his mind became moody, he would pass and meet friends but could not and did not recognize them, nor would he speak to them even though they spoke to him because at the time he did not recognize them due to his then mental incapacity; that from the time of said Nueces County attack defendant experienced mental upsets and disturbances revealing various degrees of insanity same usually following the happening of some fact or event which at the time was disliked by defendant or contrary to what defendant thought about it.

"(a) While a student at Veterans Vocational School at Harwood, Texas, in 1954, 1955 & 1956, on the happening of things, expression of ideas and teaching of theories contrary to what defendant though__ or understood about same, defendant at times became mentally up-set, not normal, frustrated and very moody;

"(b) While attending said school, at times, defendant and the other students were required to apply practically what they had studied in theory, and on one of such occasions in 1956 defendant became mentally upset, lost the power of mental control and understanding, became dangerous to the point of making it unsafe for others to be around him and acted as an insane or near insane person would at the time under the facts and surrounding circumstances.

"(c) In such mental condition defendant then and there took an ax, swung, chopped and wielded same without rhyme or reason endangering the whole vicinity. In his class at the time were 20 or 25 other students, all of whom then resided in Texas at various places, towns and counties, all of whom have graduated now, and a new class now attended such

If, contrary to the record before us, there is reason to believe that appellant is insane, a jury trial of that issue is not precluded by the disposition of this appeal. Art. 932b, Sec. 4, Vernon's Annotated Code of Criminal Procedure.

Appellant's motion for rehearing is overruled.

MORRISON, Presiding Judge (dissenting.

After more careful study, I find that I cannot agree to the affirmance of this death penalty conviction and will state my reasons.

The homicide occurred during the early morning hours of March 4. The appellant,

school, and defendant verily believes and asserts that all of such members of his said class, or most of them, still reside in Texas, and if this case is continued his attorney will be able in a reasonable period of time to locate such members, cause them to be subpoenaed as the law provides and procure their attendance at defendant's trial to testify as witnesses for defendant thereat. Defendant's attorney since his employment herein and the date of setting this case for trial has not had a reasonable period of time, not sufficient time, to attend to such Vocational School matter of witnesses, most of whom from time to time witnessed one or more periods when defendant passed into such mental lapses or spells and became insane, or near insane, and dangerous, vicious and harmful to those around him. The testimony of such witnesses is very material to the defense of this defendant for the felony he stands indicted of committing in this cause.

"VII.

"Defendant says that one time in 1956 when he was seized with a mental spell and experienced a mental crack-up which passed into temporary insanity, that Santiago Pasquero, an adult resident of Lockhart, Caldwell County, Texas, was present and saw and understood the defendant's mental plight and defendant says that if said witness were present to testify in defendant's behalf that his testimony would be material to defendant's defense; that for many years said witness has resided in Lockhart, Texas but annually leaves the state of Texas each year temporarily to work and earn money, at the end of each such period he returned to Lockhart, which is his permanent home, and resides there the balance of the year and several weeks before March 4th, 1957, said Pasquero left Lockhart and went to New Mexico and California for a temporary period of work and since so leaving has not returned to Lockhart, but in all probability will so return in a few weeks, as he customarily and annually does, where-

upon defendant can then subpoena him as a witness as the law provides to appear in this cause and testify in behalf of defendant, and his such testimony is material to defendant's defense in this cause, and defendant verily believes and asserts such desired witness' presence can and will be procured for such purpose if this cause is continued.

"VIII.

"Defendant says that none of said witnesses are absent by the procurement or consent of the defendant.

"IX.

"Defendant says this application is not made for delay, and that there is no reasonable expectation that the attendance of said witnesses can be secured during the present term of this court by a postponement of the trial to some future day of this court.

"X.

"This is defendant's First Application for a continuance.

"XI.

"Counsel for defendant since his employment herein and to the date of calling this case for trial has been unusually diligent in trying to locate such witnesses within Texas, procure data from proper headquarters of U. S. Agencies where such data is available with the point in view of by proper legal process *compell* the attendance of said witnesses at this trial, but lack of time together with the other duties counsel has had to attend to has prevented defendant having ample time, or a reasonable period of time in which to locate said witnesses, make application therefor, have subpoenas issued therefor, and compel their attendance at this trial at this time, said witnesses now being absent from this court and defendant having used due and sufficient diligence to procure such attendance within the time permitted as above shown, and defendant moves to continue this cause to the next term of this court. Signed March 18th, 1957.

"Clark R. Purcell /s/

---

"(Clark R. Purcell) Defendant"

a 61 year old widower whose father had died in a State hospital for the insane and who lived alone with the aged mother of his deceased wife, was indicted later in the same day for murder growing out of her death and was forced to trial, over a motion for continuance, on March 18, which was eleven days after attorneys had been employed to defend him. The sole defense was that of insanity. The principal ground for continuance was the inability of counsel for the accused, in spite of the exercise of due diligence, to secure, during the short period of time following indictment, certain records which were stored at the Air Reserve Records Center at Denver, Colorado, which he alleged would have supported his claim as to his mental condition during his recent service in the Air Force. On the last day of the trial, but after verdict, a telegram was sent to the trial judge from the office of the Secretary of the Air Force stating that the medical records would be made available. The records, which were presented at the hearing on the motion, indicate that a few years prior to the homicide the accused had been discharged from the Air Force, among other reasons, because of "mental deterioration."

The seriousness of the absence of this medical testimony is punctuated by the argument of the State's counsel as follows:

"As late as 1955, this defendant was a major in the armed forces of this country. As you have heard testimony from the stand, the armed forces have a psychiatrist there at all times. If this man was crazy as late as 1955, a major, not just ordinary run where he might not be noticed, wouldn't his insanity, if he had any, then be noticed? Wouldn't something have been done about it?"

While not reversible error within itself, let us analyze this argument in its proper setting. A motion for continuance had been filed for the accused because of the inability of his counsel to secure in time for trial his military records which he alleged

would show his mental condition during such service. They were clearly admissible. Dowling v. State, Tex.Cr.App., 301 S.W.2d 920. This fact was known to the prosecution, by the filing of the motion, but not necessarily by the jury. Then, in his argument to the jury, the prosecutor tells the jury that, if the accused had shown any indication of insanity while in the service, there would be military records to evidence such fact and the accused would have produced such records before the jury and, since he had failed to do it, it was inferable that no such records existed, when in fact the prosecution might reasonably have assumed at the time of the trial, and the trial court *knew* at the time of the hearing of the motion, that such records did exist.

In this connection, it should be noted that when appellant's attorneys secured his military medical record they learned for the first time that Dr. John W. Fisher of Dallas had been a member of the Medical Board in the Air Force which had ordered the appellant released from service and Dr. Fisher testified at the hearing on the motion for new trial. I have concluded that his testimony would have been beneficial to the accused if it had been available at the trial. I should further call attention to the fact that the appellant, his attorneys and relatives did not know the names of the members of the Medical Board nor the nature of the report which they made to the Air Force which brought about his discharge prior to the receipt of appellant's military record from the Air Force Center after the termination of the trial.

In addition to the above, I call attention to the following: Dr. David Wade, the State's sole psychiatrist, testified on the trial and expressed the opinion that the accused knew the difference between right and *wrong* and was legally sane. On the motion for new trial, Dr. Wade testified that during his examination of the accused on the day of the homicide he found that the appellant suffered from a paranoid condition which demonstrated itself in mandatory delusions producing homicidal tend-

encies, that he had so informed the prosecution in his written report to them, but that at the trial he was not asked and did not volunteer such information.

We are always, as here, concerned with the question of diligence in behalf of the accused, but in the case at bar the accused was forced to trial within 14 days after the homicide and 11 days after counsel had been secured to represent him in a case in which the State and the court were informed that the defense of insanity would be interposed. In such a case, I would not require those in charge of his defense to familiarize themselves to the same extent as I would in a case in which an accused had a reasonable time to prepare for trial. Pappas v. State, 127 Tex.Cr.R. 570, 78 S. W.2d 619. The prosecution and the trial courts should remember in the trial of criminal cases such as the one at bar the "speedy trial" guaranteed by the Constitution, Art. 1, § 10 does not mean that it shall be conducted like a fire truck on which the motor begins to turn when the offense is committed and is kept running at top speed until the jury verdict is received. All court dockets should be kept current, but deliberateness is the watchword of the judicial processes in a democracy, and every accused should have a reasonable time in which to prepare for trial. The nature of the possible defenses should determine what is a reasonable time.

I respectfully dissent.

### On Appellant's Second Motion for Rehearing

DAVIDSON, Judge.

My brethren have divergent views as to the disposition that should be made of this case. One is convinced that the case should be affirmed. The other is convinced that it should be reversed.

Thus my conclusion determines the case. By my vote I either affirm the conviction that sends this appellant to his death in the electric chair or I give him another trial. Such is a tremendous responsibility.

I was fully aware of the responsibility to be vested in me when I asked for and was elected to the high office of a judge of this court. I have no inclination or desire to shirk that responsibility or to fail to do my duty as a judge. My only concern is that the conclusion I reach be right and that it be in keeping with the due administration of the law and the preservation and protection of life and liberty, as guaranteed by Art. 1, Sec. 19, of our State Constitution, Vernon's Ann.St.

I agreed to the conclusion expressed in the original opinion in this case, and also to that of my brother WOODLEY upon motion for rehearing, that reversible error was not reflected in the trial of this case.

I recognized then, and recognize now, that there was much force in the reasoning of my brother MORRISON as expressed in his dissenting opinion.

As I have approached and now approach a conclusion in the case there was and is constantly before me the thought that this man was tried rather hurriedly in an atmosphere necessarily made hostile by reason of the brutal murder.

The defense of insanity was the sole defense.

I know that such defense required time and much investigation to prepare for a proper presentation.

There were facts material to that defense which could have been secured and would have been given the jury but for the hurried trial. Those facts were before the court on the hearing of the motion for new trial.

I am unwilling to place this entire blame upon appellant's counsel for failing to have that proof upon the trial. Certainly the blame can not be laid at the feet of the appellant, himself.

A motion for continuance was sought, though not based specifically upon the absence of the above testimony.

I can not lose sight of the fact that upon the trial of the case Dr. Wade, the psychiatrist upon whose testimony the state relied strongly to defeat the plea of insanity, was in possession of additional information and would have testified thereto had he been interrogated thereon and would have expressed an opinion favorable to the appellant's plea of insanity.

Who is to be blamed for not asking the doctor relative to the testimony he could have given, upon interrogation, is not the question. That the doctor did not so testify should not be wholly charged to the appellant or his counsel.

Though the doctor could have given such testimony and the representatives of the state knew of such absent testimony, it was not developed, or proffered either by him or the state.

I do not charge, or find, that there was any wilful or deliberate intention on the part of either Dr. Wade or the prosecuting attorney to withhold material testimony. To the appellant, the effect was the same, however, as if they had so intended. Appellant did not have the benefit of that testimony before the jury.

No one knows whether a different result will be reached upon another trial, with the absent testimony before another jury. Were this case affirmed, obviously there would not be another trial.

I have concluded that the ends of justice will best be served and maintained by according to the appellant another trial.

A conclusion for similar reasons was reached by this court in Calhoun v. State, 85 Tex.Cr.R. 496, 214 S.W. 335.

Under this record, I can not by my vote send this man to his death in the electric chair.

I agree with my brother MORRISON, Presiding Judge, that the conviction should be reversed.

Accordingly, the judgment of affirmance is set aside, appellant's motion for rehearing is granted, and the judgment of the trial court is now reversed and the cause is remanded.