**Clay Jack SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47872.**

Court of Criminal Appeals of Texas.

Dec. 19, 1973.

J. L. Phinney, II, Burleson, for appellant.

Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

The conviction was for murder with malice in a plea óf not guilty; the punishment fixed by the jury was life.

The indictment alleged that appellant voluntarily and with malice aforethought killed Norma Jean Smith on March 13, 1972, by shooting her with a gun. Norma Jean Smith was his wife.

A preliminary trial before a jury was held on November 13, 1972, and appellant was found to be sane and capable of standing trial. The case was tried on February 12, 1973, the jury found him to be sane at the time of the offense, found him guilty and assessed his punishment at life.

The sufficiency of the evidence is not questioned.

The first ground of error advanced by counsel is that the court erred in permitting Dr. Sunio, the County Health Doctor, who examined appellant prior to the preliminary trial on sanity, while testifying for the State, to give evidence that during such examination appellant "indicated to me that he shot his wife and killed her. He shot his wife in the back and then she fell and he fired several times again."

Art. 46.02, Sec. 2, Par. f, Subsection 4, Vernon's Ann.C.C.P., states:

"No statement made by the defendant during examination into his competency shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding no matter under what circumstances such examination takes place."

There can be no doubt that such evidence was not permissible under the terms

of the statute. However, its admission was harmless and does not call for reversal. The written confession of appellant previously introduced in evidence without objection, after the court had in a proper hearing outside the presence of the jury determined that it was voluntary and in full compliance with law, stated in the essential part, omitting the recitals of all necessary warnings:

"On March 13, 1972, I was at my home with my wife Jean Smith and oldest son Mickey Smith. We had all eaten supper together and while Mickey was there with us after supper my wife and I got into an argument because I wanted to borrow some money from her and she did not want to let me have it. She did not let me have it. Mickey left the house some where around six fiften (sic) P.M. He left in his own car and I do not know where he was going. About six thirty I went out to my car and got the twenty two rifle that my mother in law had given me for Christmas. I made it a habbit (sic) in the past to carry the gun in the car. I carried the gun back into the house and put it in the corner of the kitchen leaning against the cabinet. Then I fixed myself a drink of water and went into the living room. I then went back into the kitchen and my wife was standing at the sink, and when I was about five feet from her I shot her one time in the back. She fell and then screamed and looked shocked and I then shot her in the left chest or in that vicinity with the remaining bulletts (sic) in the gun. I then put the rifle on top of the refrigerator and took a towel and layed it around the front of her face on the floor. I then left the house got into my car and started for Cleburne but I had a change of mind and instead headed for Hillsboro. On the way to Hillsboro on old 81 highway south of Itasca my car shimmed and went off of the road to the right. I was not hurt. I then started walking towards Hillsboro and got as far as Love-lace and then started following the railroad tracks back towards Itasca. Officer Jenkins met me as I left the railroad tracks and had started towards where my car was. From that time on I have been with the officers to the present time. I have read this statement and it is true.

"WITNESS MY hand this the 13 day of March, 1972.

/s/ Jack Smith
(Signature)

"/s/ John R. MacLean
WITNESS

County Attorney"

Nothing he told Dr. Sunio added any incriminating fact not related in the confession, and thus the error shown by Dr. Sunio's testimony was harmless. See Sierra v. State, Tex.Cr.App., 482 S.W.2d 259; Bain v. State, Tex.Cr.App. 492 S.W.2d 475; 5 Tex.Jur.2d, p. 704, Sec. 446; and many cases collated in 13B Texas Digest, Criminal Law, ▇▇▇▇

▇ Ground of error number two urged by appellant is that the trial court erred in permitting the State's witness, Maurine Surrat, to testify that she observed bruises on the body of the deceased, Norma Jean Smith, about four years before her death, and that appellant admitted mistreatment of his wife.

After the witness saw the bruises on her friend, Norma Jean Smith, appellant came to her and told her, "I just beat the hell out of my wife. By God, I'm going to show her who's boss." He said he hit her with the butt of a gun and "drug" her across the floor by the hair of her head.

There was evidence in addition to this from the son, Mickey Smith, that for several years prior to the killing appellant was hard to get along with, that he was "hateful" around the house, that there was much discord between Smith and his wife, that there were many accusations passing between them, mostly from him.

Article 1257a, Vernon's Ann.P.C., reads as follows:

"In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. . . ."

Under the terms of the statute evidence of the "previous relationship existing between the accused and the deceased" was admissible.

In Baker v. State, Tex.Cr.App., 368 S.W.2d 627, testimony of a son that his father threatened and struck his wife, whom he killed some six years later, was held admissible under the statute and not too remote.

See also Leech v. State, 63 Tex.Cr.R. 339, 139 S.W. 1147; Jackson v. State, 96 Tex.Cr.R. 299, 257 S.W. 892; Alexander v. State, Tex.Cr.App., 8 S.W.2d 176; Stokes v. State, 162 Tex.Cr.R. 401, 286 S.W.2d 141.

This evidence was clearly admissible, and we overrule ground of error number two.

■ Ground of error number three complains that the State elicited from Mickey Smith, the 20 year old son of appellant and deceased, his opinion as to the sanity of appellant without laying a proper predicate.

This witness had lived with his parents all his life. He testified in detail as to the demeanor and conduct of his father over a long period of years. After such testimony he was asked his opinion of the sanity of his father, to which he replied that he was "not crazy, just mean."

We hold that his long association and observation of his father, and the many details he related of his father's conduct, were sufficient to entitle him to have and express an opinion as to the sanity of appellant.

■ The rule as to the opinions of a non-expert witness on the question of sanity is thus stated in 2 McCormick and Ray, Texas Practice, Sec. 1421, at page 252:

"The rule has long been settled in this state that the opinion of an ordinary witness, who has had a reasonable opportunity to observe the acts and conduct of the person in question, may be received, provided it is preceded or accompanied by a statement of the facts upon which it is based."

See 31 Tex.Jur.2d, Secs. 47 and 48, Insane and Incompetent Persons.

We overrule ground of error number three.

We have found no reversible error in the record and affirm the judgment.

Opinion approved by the Court.