Kenneth Lee **PATTERSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 47750.

Court of Criminal Appeals of Texas.

March 13, 1974.

Dissenting Opinion on Denial of Rehearing
May 22, 1974.

Tom A. Boardman, Don Wilmarth, and Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., and Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

Conviction is for murder; the punishment, life.

Appellant's first contention is that the trial court erred in refusing to grant a mistrial upon admission of an oral confession not taken in compliance with Art. 38.-22, Vernon's Ann.C.C.P.

Appellant introduced the following testimony on cross-examination of the State's witness Officer Burks, to-wit:

"Q You just came in and said 'I want the truth, nothing but the truth,' right?

"A Yes, sir.

"Q All right. When you said this to Mr. Patterson [appellant], what, if anything, did he say to you?

"A He told me that he understood that I was like his father. His father had been a policeman and that's all his father ever wanted was the truth."

On re-direct examination, the State elicited the following testimony from this witness, to-wit:

"Q Now, this comment he [appellant] made about his father, could you tell the jury what he said?

"A He told me that he understood, that I was like his father; his father was a policeman and that's all he ever wanted was the truth.

"Q Did he *then* tell you that he had killed this woman? [Emphasis Added]

"A Yes, sir, he did."

Appellant then objected to this testimony as being a violation of Art. 38.22, supra. The court instructed the jury to disregard this testimony, but denied appellant's motion for a mistrial.

Appellant, having inquired of the witness what it was the appellant told him, is in no position to complain. It appears that the oral confession immediately followed the statement elicited by the appellant.

Appellant relies on Roman v. State, Tex.Cr.App., 503 S.W.2d 252. In that case, defendant's attorney asked the witness on cross examination if an informer had told him that J. C. might be in the defendant's apartment when the informer arrived. Thereafter, over defendant's hearsay objection, on redirect the witness was allowed to testify that the informer told him on another occasion he had been to the defendant's apartment and had seen a large quantity of marihuana and had seen defendant and J. C. rolling, smoking and packaging it.

The Court there held that the rationale of Art. 38.24, V.A.C.C.P., would not permit the introduction of hearsay information of the defendant's criminal activities since they involved a different subject than was covered by the portion of the conversation brought out by the defendant.

■ In the instant case, however, the appellant introduced testimony on cross examination that the appellant had told Officer Burks that all he wanted was to tell the truth about the offense under investigation. The offense under investigation was a murder case for which appellant had previously been charged, and anything further said by appellant relating to the same subject matter became admissible by virtue of appellant's counsel's question. Appellant's attorney, having introduced the self serving statement that appellant was motivated to tell the truth, is in no position to object when the balance of the conversation as to appellant's version of the truth, as related to Officer Burks, is introduced by the State. Appellant's broad question on cross examination would even have authorized the witness to relate the oral confession. Appellant asked the witness to relate what the appellant said to him. The appellant is in no position to complain when the State asks the witness in effect to complete the answer to a question that appellant had previously posed.

■ Furthermore, the appellant failed to object prior to the witness' answer. If there had been a timely objection, there would have been only the question but no evidence on the oral confession. Appellant cannot wait to see if the answer will be favorable before he objects. The record is silent as to good cause for the failure to timely object. It is incumbent upon appellant to show good reason for the failure to timely object if he desires to avoid a waiver of the matter. We note also that the court instructed the jury to disregard the oral confession.

Appellant next complains that the State engaged in improper jury argument. The argument in question is as follows:

"MR. ORMESHER: . . . And he's progressed to the point of no return. If you look at the facts of this case, you can see one thing and that's that Kenneth Patterson is degenerated to the point where he's almost to the worst of the sadistic killers, those that would eat human flesh.

"MR. ATWOOD: Your Honor, for Heaven's sake—

"MR. ORMESHER: I base that on the evidence here when he—

"MR. ATWOOD: Your Honor, may I have an objection to the remark of counsel?

"THE COURT: Yes, sir.

"MR. ATWOOD: I ask the jury to disregard it.

"THE COURT: Overrule objection.

"MR. ORMESHER: I have based that comment on what you saw here in these photographs today, the biting of human flesh. It's just that far away from what I was talking about, the worst of sadistic killers."

Dr. Hoffman had testified that the breasts of the deceased had been severed from the body and that a bite mark was on the severed left breast. He further testified that he placed a mold of appellant's teeth on the wound and the mold fit the wound.

 The appellant made only a general objection, which is not sufficient. Alejandro v. State, Tex.Cr.App., 493 S.W.2d 230. Also, as noted by the quoted argument hereinabove, the State repeated in essence the same argument with no objection. We have, however, reviewed the evidence of Dr. Hoffman, who described the condition of the deceased, and find that the murder was of such a brutal nature that the argument complained of, if error, is not such as to call for a reversal of this conviction.

 Appellant next complains of the following closing argument of the State:

"Did you have a doctor come down and tell you from jail and don't think we're not covered with nurses and doctors up there that can come examine people. . . ."

The court overruled appellant's objection that the argument was outside the record.

Appellant argues that such argument was prejudicial to him on the issue of the coercion of the written confession and that

it was outside the record. The first line of the above argument is a fair comment on the failure of appellant to produce a doctor to verify his claims of physical abuse. The following two lines do appear to be outside the record, but do not call for reversal. Appellant states in his brief that there were no symptoms of physical abuse and a doctor or nurse could add nothing to the evidence. The fact then of whether appellant produced a doctor or of how many doctors or nurses were available to appellant was irrelevant to any issue in this case. The statement of facts in this case runs in excess of two thousand four hundred pages. Some forty-five witnesses were called. The trial lasted nearly two weeks. We fail to see how appellant could have been harmed by this one short-lived instance of jury argument on this relatively insignificant matter.

 Appellant in his next two grounds of error complains of the court's allowing Dr. Grigson to testify as a rebuttal witness in violation of Art. 46.02(2)(f)(1) V.A.C. C.P. and the Sixth Amendment to the Federal Constitution.

Prior to trial, Dr. Grigson, a psychiatrist, conducted a mental examination of appellant at the State's request. The trial court on its own motion over appellant's objection held a pre-trial sanity hearing with the jury returning a verdict finding the appellant to be "sane at the time of this trial."

During the trial on the merits before a different jury, the appellant called as a witness Dr. Siegel, a psychologist. Prior to the substantive portion of this witness' testimony, the court admonished appellant's counsel as follows:

"THE COURT: . . . Counsel, I think you're opening up an area if you go into it certainly the State would be entitled to call rebuttal witnesses.

Dr. Siegel then testified that in his opinion the particular crime in question would be out of character for appellant's type of

personality and he gave his reasons for arriving at this conclusion.

The State on rebuttal called Dr. Grigson, who testified that appellant has a sociopathic personality disorder; that the appellant's type of personality is such that he would commit exactly the type of crime for which he was charged; and that he has a tremendous anger toward women. It is this testimony to which appellant objects.

By introducing Dr. Siegel's testimony, appellant waived any objection to Dr. Grigson's testimony. Brown v. State, Tex.Cr.App., 457 S.W.2d 917. We note that the court adequately forewarned appellant of these consequences if he persisted in going forth with Dr. Siegel's testimony.

The cases of Gephart v. State, 157 Tex. Cr.R. 414, 249 S.W.2d 612, and Stultz v. State, Tex.Cr.App., 500 S.W.2d 853, are controlling and contrary to appellant and contain a full discussion of the constitutional contentions made by appellant.

Appellant introduced expert evidence of appellant's lack of mental capacity to commit this crime and the State properly rebutted with expert testimony on the same subject. Art. 46.02(2)(f)(1), V.A.C.C.P., should not be interpreted as an exclusive procedure. We overrule appellant's grounds of error four and five.

The next two grounds of error relate to the following portion of the evidence:[1]

"A critical phase of the State's case centered on evidence of a bite mark on the severed left breast of the deceased. Dr. Hoffman testified that a wound on the left breast was a human bite mark.

Officer Burleson took the Defendant to Southwestern Medical School on April 1, 1970, to obtain a second cast of the Defendant's teeth. Dr. Hoffman asserted that bitemarks are characteristic as fingerprints. Dr. Hoffman placed a mold of the Defendant's teeth on the wound, the mold fit the wound. The doctor admitted that there might be other persons whose teeth would match the bitemarks.

Dr. James Bertz made a second cast of the Defendant's teeth. He stated that the wound had to have been made by five teeth just like the Defendant's. The witness stated that, due to amputation and other factors, the marks on the breast could have either shrunk or stretched by as much as $\frac{7}{10}$'s of a millimeter.

The Defense called Dr. Jim Beaver, who was unable to match the plaster mold of the breast. He did match a mold of one of his patients to the marks on the mold of the breast.

Dr. Norman Biggs, Chairman of the Department of Anatomy, Baylor University College of Dentistry, testified that the distance between the marks on the breast could not be accurately measured, that a variation of as much as one millimeter would exist. He stated that the method of measurement used by the State's witnesses was not scientifically precise. It was the witness' opinion that identification by teeth marks is not as reliable as fingerprints, even if all thirty-two teeth are compared and that five teeth marks are not enough to identify someone."

Appellant first contends that the trial court erred in admitting evidence of a mold or cast of appellant's teeth taken in violation of the search and seizure provisions of the Fourth and Fourteenth Amendments to the Federal Constitution.

▇ We hold that to require the appellant to produce a mold of his teeth is not in violation of any constitutional protection. In Olson v. State, Tex.Cr.App., 484 S.W.2d 756, there was an extended discussion of the different kinds of physical evidence that are and are not within the protection of the Constitution. There we held

1. From appellant's statement of facts as approved by the State.

handwriting examples to be compellable. We hold requiring a defendant's teeth marks is likewise compellable.

 Appellant next urges error in the admission into evidence of testimony comparing the teeth marks on the deceased's body with appellant's teeth marks on the mold, because the test results were not sufficiently scientifically proved for reliability. We held similar evidence admissible in Doyle v. State, 159 Tex.Cr.R. 310, 263 S.W.2d 779. The objection goes to the weight rather than to the admissibility. See Polk v. State, Tex.Cr.App., 500 S.W.2d 825. Furthermore, appellant's written confession containing an admission that he bit the deceased on the breast renders the error, if any, harmless.

 Appellant next complains that the trial court erred in admitting evidence of the bite marks in that the State suppressed evidence by not preserving the original breast of the deceased from which the bite mark mold was taken. He urges that his expert witnesses were seriously handicapped by not having the original breast tissue to work from as did the State's expert witnesses.

We overrule appellant's contention. See Murray v. State, Tex.Cr.App., 505 S.W.2d 589 (Decided February 13, 1974). There is no showing that the State deliberately suppressed or destroyed the evidence or even that it could have been reasonably preserved.

 Appellant next complains that the court improperly charged the jury at the guilt stage of the trial on the issue of murder with and without malice. We have previously held that the issue of malice is proper on the punishment rather than the guilt stage of the trial. However, absent appellant's objection, the matter was waived. Cobbs v. State, Tex.Cr.App., 495 W.2d 900.

Finding no reversible error, the judgment is affirmed.

ODOM, Judge (dissenting).

The judgment should be reversed and the cause remanded on appellant's first ground of error.

I dissent.

ROBERTS, J., joins in this dissent.

## ON APPELLANT'S MOTION FOR REHEARING

ROBERTS, Judge (dissenting in part and concurring in part).

Appellant urges this Court to reconsider his ground of error # 1, relating to testimony received concerning an oral confession made by the appellant. I have done so and conclude that the Court erred in its disposition of this ground. The reliance by the majority on original submission upon Art. 38.24, Vernon's Ann.C.C.P., was misplaced and totally ignores the rule of law as properly announced in the *unanimous* decision of this Court in Roman v. State, 503 S.W.2d 252 (Tex.Cr.App.1974). As was stated in the original majority opinion, the controversy centers around the following colloquy, which occurred as Officer Burks testified:

[Defense Counsel cross-examining]

"Q You just came in and said 'I want the truth, nothing but the truth,' right?

"A Yes, sir.

"Q All right. When you said this to Mr. Patterson [appellant], what, if anything, did he say to you?

"A He told me that he understood that I was like his father. His father had been a policeman and that's all his father ever wanted was the truth."

On re-direct examination, the State elicited the following testimony from this witness, to-wit:

"Q Now, this comment he [appellant] made about his father, could you tell the jury what he said?

"A He told me that he understood, that I was like his father; his father was a policeman and that's all he ever wanted was the truth.

"Q Did he *then* tell you that he had killed this woman? [Emphasis added]

"A Yes, sir, he did."

The majority opinion states that the appellant told Officer Burks "that all he wanted was to tell the truth about the offense under investigation" and that appellant introduced the fact that "[he] was motivated to tell the truth." I cannot agree that the record actually supports such statements. A reading of the record reflects that prior to the colloquy quoted above the following cross-examination of Burks occurred:

"Q When you first walked into the door and Mr. Patterson was in the interrogation room, would you tell us what you said to him, please, sir.?

"A I told him I was a police officer and that I was interested in the truth; I didn't want anything but the truth from him.

"Q The truth and nothing but the truth?

"A Yes, sir.

"Q Did you tell him you didn't want any more damn lies?

"A I probably did tell him I didn't want to hear any lies, yes, sir.

"Q Well, when you said this to Mr. Patterson did you say it in a pleasant tone?

"A In a matter of an interview, I told him I didn't want him to lie to me, that I just wanted the truth."

It is illogical to say that because the appellant thought of the officer as a father-image, and that his own father always sought out the truth, an oral confession at that point sheds light *on the same subject*. Sanders v. State, 458 S.W.2d 193 (Tex.Cr. App.1970). What the majority opinion on original submission overlooked is the fact that the *subject* involved at this point in the record was the amount of coercion, if any, which prompted the appellant's *written confession*.

As was stated in Roman v. State, supra:

"The purpose of this provision [Art. 38.24, V.A.C.C.P.] is to reduce the possibility of the fact finder receiving a false impression from hearing the evidence of only a part of the conversation, writing, act or declaration. The theory behind the rule is that by allowing the jury to hear the rest of the conversation on the same subject the whole picture will be filled out, *removing any misleading effect* which may have occurred from introduction of only a portion of the conversation. Obviously this purpose is achieved by receipt of the balance of the conversation *on the same subject*. But to permit under this rule the introduction of other portions of such a conversation wholly unrelated to the matter initially gone into cannot contribute to achievement of the purpose of the rule." (Emphasis supplied in the first instance only)

The original majority opinion failed to state what it considered to be the "misleading effect" which the appellant left. The subject in question was the voluntariness of the written confession and the question and answer elicited by the State in no way shed any light on that subject. The error was compounded on original submission by the broad statement that appellant's question "would even have authorized the witness to relate the oral confession."[1]

---

1. The State, obviously recognizing the impropriety of the question the prosecutor posed, immediately asked that the question be withdrawn.

Therefore, having concluded that Art. 38.24, supra, has no application to this ground, that portion of the original majority opinion relying upon this article as authority for disposing of the appellant's first ground of error should be overruled.

Further, I cannot conclude that the reference to the oral confession would constitute harmless error because of the presence of the written confession. As has been pointed out, the very subject in question here was the voluntariness of the *written* confession, and the jury had before it evidence of coercion. Certainly, reference to an *oral* confession would logically serve to bolster the credibility of that written instrument in the minds of the jurors.

Despite this, I cannot conclude that the cause must be reversed on this point, since the record contains at least one other reference to the oral confession, a reference which was not objected to by defense counsel. A polygraph examiner was testifying and the following occurred:

[Questioning by the prosecutor]

"Q After you left, did anyone contact you?

"A Yes, sir, Mr. Canty [another polygraph examiner] called me at the Chariott Inn and told me that Patterson [appellant] had orally admitted."

No objection was voiced to this examination. Thus, I conclude that since substantially the same testimony came into evidence without objection, reversible error is not shown.

I would deny appellant's motion for rehearing, but overrule the original majority opinion to the extent it relied upon Art. 38.24, supra.

ODOM, J., joins this opinion.