**Excell WHITE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51123.**

Court of Criminal Appeals of Texas.

July 14, 1976.

Rehearing Denied Oct. 6, 1976.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of murder; the punishment is death. The offense was committed in Collin County on May 11, 1974. The applicable statutes are V.T.C.A. Penal Code, Sec. 19.03 and Article 37.071, V.A.C.C.P. The prosecution was in Dallas County after a change of venue from Collin County.[1]

The appellant urges a reversal of the judgment, alleging that (1) the Penal Code and Code of Criminal Procedure permit arbitrary imposition of the death penalty in violation of his rights under the United States Constitution; (2) the indictment is misleading and insufficient to allege the offense of capital murder; and (3) the trial court failed to apply the standards of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), in the voir dire of the jury.

Since the sufficiency of the evidence to show the appellant's guilt is not controverted, a full recitation of the facts is unnecessary. This prosecution arises from the murder of three persons at a grocery store in the course of a robbery at the store.

In *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975), this Court considered the constitutionality of Article 1256, V.A.P.C. and Article 37.071, V.A.C.C.P. V.T.C.A. Penal Code, Sec. 19.03 has now replaced Article 1256, V.A.P.C., but insofar as concerns the attack made on the present statutes, there is no difference between V.T.C.A. Penal Code, Sec. 19.03 and Article 1256, V.A.P.C. This Court in *Jurek v. State*, supra, declared Article 37.071, V.A.C.C.P., and Article 1256, V.A.P.C. [now V.T.C.A. Penal Code, Sec. 19.03] to be constitutional. The Supreme Court of the United States has affirmed. *Jurek v. Texas*, —— U.S. ——, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). This ground of error is overruled.

The indictment, in pertinent part, alleges:

J. E. Abernathy, Stan McWilliams, Robert H. Roeder, McKinney, for appellant.

Tom O'Connell, Dist. Atty. and William H. Jouette, Asst. Dist. Atty., McKinney, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

1. After trial and entry of judgment, the cause was transferred back to Collin County, without objection, for the purpose of appeal, it being noted that the trial judge, court reporters, attorneys for both parties, witnesses were all residents of Collin County and the grounds upon which the original change of venue had been granted and been terminated.

" . . . did then and there intentionally and knowingly cause the death of Preston Broyles, by shooting him with a gun, and the said Excell White and James Livingston and Gary Dale Livingston, acting together, did then and there intentionally cause the death of the said Preston Broyles, and in the course of committing robbery, to-wit: Excell White and James Livingston and Gary Dale Livingston, acting together did then and there while in the course of committing theft and with intent to obtain property of Preston Broyles, to-wit: a wallet, without the effective consent of the said Preston Broyles and with intent to deprive the said Preston Broyles of said property, did then and there intentionally and knowingly cause bodily injury to the said Preston Broyles by shooting him with a gun."

Although not grammatically correct, we hold that the indictment is sufficient. If the comma and the word "and" between the words "cause the death of the said Preston Broyles" and "in the course of committing robbery" were omitted, that portion of the indictment would read: "cause the death of the said Preston Broyles in the course of committing robbery." The latter phrase would be more correct, but we do not find that the appellant was misled or that he did not have fair notice of the offense with which he was charged. This ground of error is overruled.

The appellant contends that the trial court failed to properly apply the standards of *Witherspoon v. Illinois,* supra, in the voir dire examination of prospective jurors; he specifically asserts that prospective jurors Davis and Barbour were excused in violation of the standards of *Witherspoon.*

The rule of *Witherspoon v. Illinois,* supra, *Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), and *Maxwell v. Bishop,* 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970), which militates against the exclusion without further inquiry of prospective jurors for stating general objections to the death penalty, is applicable to the new procedure set forth in Article 37.071, V.A.C.C.P., for determination of punishment in a death penalty case. See *Hovila v. State,* 532 S.W.2d 293 (Tex.Cr. App.1975). See also V.T.C.A. Penal Code, Secs. 12.31(b) and 19.03.

*Witherspoon* specifically held that:

" . . . a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 88 S.Ct. 1770, at 1776–1777.

It was further noted that:

"Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial may reveal, it simply cannot be assumed that that is his position." 88 S.Ct. 1770, footnote # 9 at 1773–1774.

*Boulden v. Holman,* supra, further explained the holding in *Witherspoon* as follows:

" . . . it is entirely possible that a person who has a 'fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law— to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case." 89 S.Ct. 1138 at 1141–1142.

On the other hand, it was made abundantly clear in *Witherspoon* that the decision reached therein had no bearing on the right of the prosecution to challenge for cause any prospective juror who stated that he would automatically vote against the imposition of capital punishment without regard to the evidence which might be developed at the trial or that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt.[2]

---

**2.** 88 S.Ct. 1770 at 1772; also see footnote # 21 to the majority opinion, 88 S.Ct. 1770 at 1777.

Appellant first directs our attention to the examination of venireman Theodore R. Davis. The relevant portion of that voir dire examination appears in the record as follows:

"THE COURT: . . . .

"Then I advised the jury panel further that in all capital cases where a jury has reached a verdict in a capital case—we are not talking about this one now; we are just talking about a capital murder case—where a jury has reached a verdict, then the Statutes provide that the punishment to be assessed shall either be life in the penitentiary, or death in the electric chair.

"I asked each member of the jury, from the time I instructed them, until the time they were called forward into Court, to consider whether or not in a proper case they could assess the punishment at death in the electric chair.

"Now I am asking you, in a proper case, where a jury had returned a verdict of guilty, could you and would you assess death in the electric chair, if you thought that to be the proper punishment?

"MR. DAVIS: No, Sir, I don't think so.

"THE COURT: All right, Sir. I will excuse you. Thank you very much. Give the bailiff your badge."

While the examination of venireman Davis was not as searching as it might have been, it is sufficient to indicate that Davis could not return a verdict of death, or, conversely, that he would automatically vote against the imposition of the death penalty. Counsel for the appellant did not request further voir dire examination of either of the cited veniremen; no objection was raised at the time each was excused.[3]

The other voir dire examination cited by appellant is that of Harriet Barbour. The pertinent portion of that examination appears in the record as follows:

"THE COURT: . . . .

"I asked each member of that jury panel to search their mind and conscience to determine whether or not in a proper case, if they were a member of a capital murder jury that had previously found the defendant guilty as charged in the indictment, if he or she could and would assess death in the electric chair if they thought it to be the proper punishment.

"In a proper case, could you consider and assess death in the electric chair if you felt that to be the proper punishment?

"MRS. BARBOUR: I am not sure. I think I believe in it, but I am not sure that I could carry it out.

"THE COURT: Well, of course, you are not called upon to carry it out, you understand.

"I realize the difficulty of your position. There are very very few people ever called, first, to even serve on a jury, and a smaller number of those people are called to serve on a criminal jury, and a very minute number of those people are ever called upon to serve in a capital murder case. So you have never been asked that question before.

"But since this is a capital murder case I must ask you, and I must insist you give us an answer. Now we are not referring to this case, because neither the Court nor the attorneys can precommit you as to what you would do in this case—you haven't even heard the testimony. But in a capital murder case, more specifically a criminal homicide that was committed during the course of another felony, if you were selected as a member of the jury, you had heard all of the evidence, based upon that evidence you and your fellow members of the jury had found the defendant guilty as charged in the indictment, then in the second phase of the trial, whether you heard other evidence or not, and once again you retired to consider what you feel the proper punishment is to assess, based upon the facts in the case. Now one of the punishments that you are going to have to face is, if

**3.** The rule in *Witherspoon,* supra, *Boulden v. Holden,* supra, and *Maxwell v. Bishop,* supra, had been applied in this State well before the instant case was tried, and should be known by all lawyers. See *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

you consider it proper punishment, could you and would you assess death in the electric chair?

"MRS. BARBOUR: I think so.

\* \* \* \* \* \*

"[BY COUNSEL FOR THE STATE]

"Q. . . .

"The question that is before us today—and by 'us' again I mean counsel for the State, and defense, and yourself—is whether your frame of mind is such with reference to assessment of death in the electric chair as a punishment that you could not consider and assess death in the electric chair, even though you might feel it justified and warranted by the facts in the case. That is the question I need to ask you. We need may be to discuss that a little bit—I don't know.

"As the Court advised you, we are not entitled, nor am I attempting to commit you as to what you will do in any given situation, because you don't know, and no one else would, either, not having heard any evidence. But if you personal situation is such that under no circumstances you, yourself, could consider and assess death in the electric chair, then that is a matter we need to know at this time.

"A. I just really don't know.

\* \* \* \* \* \*

"Q. . . .

"It is a difficult question, I can appreciate that. But in any criminal trial, and more particularly in a capital murder case, there is a heavy responsibility that each member of the jury bears, there is a heavy responsibility, for that matter, that counsel for the defense, as well as counsel for the State bears. Only you can tell us, because only you know, if your situation is such and your personal conscience is such that you could not be a part, an active part—I am not speaking of a passive part; I am speaking of an extremely active part—in a criminal trial in a capital murder case where the punishment of death is authorized by the law, as to whether or not you can take an active

part in the consideration and the assessment of death in the electric chair, where the facts are shown to be proper and the punishment shown to be warranted. If you can't do that, that is fine. But we need to know that. That is certainly nothing to be upset about.

"A. I don't think so.

"THE COURT: All right, Mrs. Barbour, we will excuse you. Thank you very much for your patience these past two days."

In the light of the "cold" record before us, it would be difficult to say whether venireman Barbour unequivocally stated that she would automatically vote against imposition of the death penalty; however, when she was faced with the question of whether she could take an active part as a juror in the consideration and assessment of the death penalty in a given case, she responded that she did not "think so." Her answer was tantamount to a declaration that her personal qualms about the imposition of the death penalty would prevent her from being an impartial juror in a case in which the range of punishment included the death penalty.

■ In this troublesome area of the "equivocating venireman," we adhere to the following statement from *Tezeno v. State,* 484 S.W.2d 374 (Tex.Cr.App.1972):

"We cannot believe that *Witherspoon v. Illinois,* supra, requires certain formal answers and none other. We surely feel that the test of *Witherspoon* is 'not to be applied with the hypertechnical and archiac approach of a 19th century pleading book, but with realism and rationality.'

"We are aware of a large number of death penalty cases which have recently been reversed in memorandum opinions by the United States Supreme Court.[3] [Footnote 3 citing cases omitted] While it is difficult, if not impossible to synthesize a rule from those opinions, we have concluded that the voir dire in the instant case and the answers of the veniremen are more unequivocal than those which

were set forth in the cases which have been reversed . . ." 484 S.W.2d 374 at 383–384.

See also the discussion of the examination of venireman Sutton in *Curry v. State,* 468 S.W.2d 455 (Tex.Cr.App.1971), reversed as to death penalty in light of *Stewart v. Massachusetts,* 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972), in *Curry v. Texas,* 408 U.S. 939, 92 S.Ct. 2872, 33 L.Ed.2d 761 (1972). After a careful search and consideration of the record we find that neither of the cited veniremen, Davis nor Barbour, was excused in violation of the standards of *Witherspoon.* This ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, J., concurs.

## OPINION ON APPELLANT'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

DOUGLAS, Judge.

The *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), question is urged again. We have reviewed the record and find no objection to the discharge of the prospective jurors.

In *Boulware v. State,* 542 S.W.2d 677, we held that before one can complain of improper discharge of a prospective juror, an objection has to be made in the trial court.

In view of that holding, the prior dissenting opinion has been withdrawn and leave to file the motion for rehearing is denied.