James LIVINGSTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 52139.

Court of Criminal Appeals of Texas.

Oct. 6, 1976.

Bob Hillin, Dallas, on appeal only, for appellant.

Tom O'Connell, Dist. Atty., Howard Shapiro and Barry Elliott, Asst. Dist. Attys., McKinney, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for the offense of capital murder, wherein the punishment was assessed at death. See V.T.C.A., Penal Code, Sec. 19.03, and Article 37.071, Vernon's Ann.C.C.P.[1]

The case was tried in Dallas County following a change of venue from Collin County. After trial and entry of judgment, the cause was transferred back to Collin County, without objection, for the purpose of

1. This is a companion case to *Excell White v. State,* 543 S.W.2d 104 (Tex.Cr.App.1976).

appeal, it being noted that the trial judge, court reporters, attorneys for both parties, witnesses were all residents of Collin County and the grounds upon which the original change of venue had been granted had been terminated.

■ Initially appellant contends the court erred in overruling his motions to quash the indictment. In a single ground of error appellant lists thirteen reasons why the indictment is defective. Clearly the ground of error is multifarious and not in compliance with Article 40.09, Vernon's Ann.C.C.P. See *Rodriquez v. State,* 530 S.W.2d 944 (Tex.Cr.App.1975); *Campbell v. State,* 525 S.W.2d 4 (Tex.Cr.App.1975); *Abercrombie v. State,* 528 S.W.2d 578 (Tex. Cr.App.1975); *Weeks v. State,* 521 S.W.2d 858 (Tex.Cr.App.1975); *Jackson v. State,* 516 S.W.2d 167 (Tex.Cr.App.1974). Nevertheless, we shall consider the same. See Article 40.09, Sec. 13, Vernon's Ann.C.C.P.

The indictment, omitting the formal parts, reads as follows:

" . . . that one Excell White and James Livingston and Gary Dale Livingston, acting together on or about the 11th day of May in the year of our Lord One Thousand Nine Hundred and Seventy-four, and anterior to the presentment of this indictment, in the County of Collin and State of Texas, did then and there intentionally and knowingly cause the death of Billy Glen St. John, by shooting him with a gun, and the said Excell White and James Livingston and Gary Dale Livingston, acting together, did then and there intentionally cause the death of the said Billy Glen St. John, and in the course of committing robbery, to-wit: Excell White and James Livingston and Gary Dale Livingston, acting together did then and there while in the course of committing theft and with intent to obtain property of Billy Glen St. John, to-wit: A wallet, without the effective consent of the said Billy Glen St. John and with intent to deprive the said Billy Glen St. John of said property, did then and there intentionally and knowingly cause

bodily injury to the said Billy Glen St. John by shooting him with a gun. . . ."

This is the same indictment as in *Excell White v. State,* 543 S.W.2d 104 (Tex.Cr. App.1976), except that the name of the victim is different. The victim there was alleged as Preston Broyles. In *White* the court wrote:

"Although not grammatically correct, we hold that the indictment is sufficient. If the comma and the word 'and' between the words 'cause the death of the said Preston Broyles' and 'in the course of committing robbery' were omitted, that portion of the indictment would read: 'cause the death of the said Preston Broyles in the course of committing robbery.' The latter phrase would be more correct, but we do not find that the appellant was misled or that he did not have fair notice of the offense with which he was charged. This ground of error is overruled."

The same can be said of the instant indictment.

■ Both of appellant's motions to dismiss the indictment were overruled, and it does not appear that appellant offered any arguments to the trial court in support of the general assertions in the written motions. On appeal, thirteen specific complaints are directed to the indictment. Most of these were never called to the trial court's attention, and having failed to object on these grounds during trial, he is precluded from raising them for the first time on appeal, *Burrell v. State,* 526 S.W.2d 799 (Tex.Cr.App.1975), unless such contentions are cognizable under Article 27.08, Vernon's Ann.C.C.P., to-wit: that the indictment failed to allege the constituent elements of the offense. See *Terry v. State,* 517 S.W.2d 554 (Tex.Cr.App.1975); *American Plant Food Corporation v. State,* 508 S.W.2d 598 (Tex.Cr.App.1974). Unless the complaints (not presented to the trial court) fall within the exception, nothing is presented for review. As to those complaints presented to the trial court, e. g., (1) indictment, vague, uncertain, misleading, *not apprising the appellant of which of-*

fense he is charged; (2) does not state offense; (3) charges more than one offense, etc., we conclude that what we said in *White v. State,* supra, is controlling, and no error·is presented. And we do not find the other contentions fall within the announced exception calling for review.

Still further, in a separate ground of error appellant contends the failure of this capital murder indictment to allege ownership of property taken in the robbery renders the indictment fundamentally defective. Reliance is had upon *Lucero v. State,* 502 S.E.2d 128 (Tex.Cr.App.1973), dealing with a robbery indictment under the former Penal Code. In *Watson v. State,* 532 S.E.2d 619 (Tex.Cr.App.1976), it was held that failure to allege ownership of ·property taken in a robbery indictment drafted under the present Penal Code does not render the indictment defective. See also *Reese v. State,* 531 S.W.2d 638 (Tex.Cr. App.1976); *Brown v. State,* 535 S.W.2d 640 (Tex.Cr.App.1976). Since it is not necessary to allege ownership in a robbery indictment, we reject the contention that such ownership of property taken must be alleged in a capital murder indictment which alleges the murder occurred during the course of a robbery. See V.T.C.A., Penal Code, Sec. 19.03(a)(2). Further, such capital murder may occur before the complètion of the robbery and property may not even be taken. See V.T.C.A., Penal Code, Secs. 29.01 and 29.02. Still further, in *Smith v. State,* 540 S.W.2d 693 (Tex.Cr.App.1976), we held that a capital murder indictment is not fatally defective because the elements of robbery are not set out in the indictment charging murder during the commission or attempted commission of robbery. Under the new Penal Code, an indictment charging one offense during the commission of another crime need not allege the elements of the latter offense. See *Smith v. State,* supra; *Gonzales v. State,* 517 S.W.2d 785 (Tex.Cr.App.1975); *Watts v. State,* 516 S.W.2d 414 (Tex.Cr.App.1974).

Appellant also advances the contention that the trial court erroneously excused twenty-one prospective jurors in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

In *Hovila v. State,* 532 S.W.2d 293 (Tex. Cr.App.1975), we held that the holding of *Witherspoon*[2] was still alive and well in light of the new statutory scheme providing for the imposition of the death penalty, the adoption of which followed in the wake of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

We have carefully examined the voir dire examination of the twenty-one prospective jurors listed by appellant and do not find that all were excused for their opposition to the death penalty. One woman, for example, was excused because she would require a greater burden of proof upon the State than "beyond a reasonable doubt." Of those who were excused for death penalty opposition, we find that the test of *Witherspoon* was carefully met in each instance. No error is reflected.

The appellant also challenges the sufficiency of the evidence to sustain the conviction. The record reflects that the deceased, Billy Glen St. John, left his home near McKinney for work in Dallas early on May 11, 1974. His wallet contained $15.00, and, according to his wife, he was driving a red pickup truck. Gary Lyn Coker also worked in Dallas. About 6:45 a. m. on the same date, John Rogers was driving east on Hwy. 380 in Collin County and observed a light

2. In *Witherspoon* the Supreme Court of the United States wrote:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

The court further wrote:

"Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial may reveal, it simply cannot be assumed that that is his position."

colored automobile, facing east, on the outside of the gas pumps at the Hilltop Grocery Store. He also saw a red pickup truck parked under the canopy, facing west, with an oil can on its hood. Rogers saw a man with a shoulder weapon get out of the passenger side of the light colored automobile and move to the back of the automobile where the proprietor of the store stood.

Leonard Davis and his wife left their home about 6:45 a. m. in separate automobiles for the purpose of getting gasoline at the store in question. On his way he observed an old white car travelling east on the highway. When he arrived at the store, he heard something and went into the store where he smelled gunpowder. Davis observed the proprietor, Preston Broyles, lying face down to his right. He saw another body (later shown to be Coker) lying by the meat counter. A third victim (later shown to be the deceased) raised upon his elbows and made a statement to Davis. Davis instructed his wife to make a telephone call at the nearest house and he left.

Police and ambulance attendants arrived at the store, shown to be three miles east of McKinney, and found Coker and Broyles dead. The deceased St. John was still alive and was carried to the Collin Memorial Hospital, where he died during emergency treatment for four gunshot wounds resulting in injury to the liver, kidneys, bowels, stomach and pancreas. Dr. Vincent DiMair, who performed the autopsy, expressed the opinion that St. John was shot while he was lying face down on the floor.

Chief Deputy Sheriff Gerald Kunkle testified that upon receiving a call he went to the Hilltop Grocery Store and found the cash register open. It contained only coins, no currency. He found ten .30 caliber hulls in the store. District Attorney O'Connell later found two more.

Deputy Sheriff Breakfield received a call on May 12, 1974, from a Cecil Murphy and met Murphy on the side of the road one or one and a half miles from the Hilltop Store where Murphy had found a wallet bearing the deceased's identification. The wallet was identified by the deceased's wife.

Deputy Kunkle related that on May 14, 1974, he received a telephone call from the sheriff's office in Cleveland, Mississippi. In company with Texas Ranger Howard Alford he then went to Cleveland, where he met and talked to Excell White, who was in custody, and was given a .22 caliber Luger pistol by the sheriff's office there. The officers received custody of White and returned to Waco, where they then recovered a .30 caliber rifle on the banks of the Brazos River. Appellant, who was in custody in Waco, gave Kunkle a written statement on May 16, 1974. Kunkle testified that the statement was voluntarily signed by the appellant after he was given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 38.22, Vernon's Ann.C.C.P.

The State introduced before the jury the following portion of the statement which reads:

"'On Saturday, May 11, 1974, about 7:00 a. m., me and Excel White and my brother, Gary Livingston, went to McKinney, Texas, in a 1966 white Pontiac, which belonged to Excel White. We went a little ways out of McKinney to a grocery store and pulled in the driveway, got out of the car, and Excel White went into the store.

"I went into the store and looked around and then hollered for White to come on. He came out with some billfolds in his hand, and we jumped in the car and left. We went toward Dallas, and then on to Waco. I went home after we split the money. I got $65.00 in U.S. currency, which came out of the store.

"When we went into the store, I had a .22 caliber pistol.'"

The defense then offered the following portion of the statement:

"'The next thing I heard was some shooting. I went into the store and looked around, and then I hollered for White to come on. But I did not shoot anybody.'"

Allan Jones, firearms examiner for the Dallas County Criminal Investigation Labo-

ratory, identified a .30 caliber bullet fragment taken from the body of the deceased as coming from a .30 caliber weapon, most likely a "Plainfield or Universal Arms," a commercial model of a military service carbine.

Fred Rymer, Supervisor, Ballistics Section, Scientific Criminal Lab, Texas Department of Public Safety, testified the 12 spent hulls recovered at the scene of the crime were fired from a .30 caliber carbine with the same rifling characteristics as the test bullets fired from the weapon recovered on the Brazos River banks, which he described as a Plainfield M–1, a .30 caliber carbine.

Appellant contends the State proved with detail the death of the deceased and two other men, but failed to connect him with the murder charged as the written statement manifestly falls short of connecting him with the murder of the deceased.

V.T.C.A., Penal Code, Section 7.01, reads as follows:

"(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

"(b) Each party to an offense may be charged with commission of the offense.

"(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice."

V.T.C.A., Penal Codes, Section 7.02, reads as follows:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

"(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or at-

tempts to aid the other person to commit the offense; or

"(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

In *Smith v. State*, supra, a capital murder conviction under Article 1257, Vernon's Ann.P.C. (immediate forerunner of V.T.C.A., Penal Code, Sec. 19.03), and Article 37.071, Vernon's Ann.C.C.P., it was held that a defendant could be convicted of murder despite the fact it was the co-defendant who killed the deceased during the course of the robbery in light of the law of principals then in effect. See also *Thompson v. State*, 514 S.W.2d 275 (Tex.Cr.App.1974).

We do not construe the foregoing Sections 7.01 and 7.02 of the new Penal Code to call for a different result, nor do we understand appellant to so contend. It appears to be the thrust of his contention, presented without citation of authority, that all of the evidence, including his written statement, falls short of connecting him with the murder of Billy Glen St. John or anyone else. It is true that a confession which is not an unequivocal admission of the commission of the crime charged does not of itself remove the case from the application of the law of circumstantial evidence. *Hielscher v. State*, 511 S.W.2d 305, 308 (Tex.Cr.App.1974). Appellant contends the confession in the instant case falls in this category since it does not directly identify the place where the incident occurred or the identity of the deceased nor establish even that anyone was shot. The confession does show that appellant was with his

brother and Excell White in McKinney on May 11, 1974, about 7 a. m. in a 1966 white Pontiac and they went out of McKinney "a little ways" to a grocery store and White went in. The portion introduced by the appellant showed he heard shooting and went inside and looked around. Other parts introduced by the State showed that at the time appellant had a .22 caliber pistol and that when White came out he had billfolds and that after they got to Waco they split the money.

■ While no witness placed the appellant at the scene, the record shows the Hilltop Grocery was three miles east of McKinney, that the witness Rogers saw a light colored car at the store about 6:45 a. m. and a man with a shoulder weapon. The witness Davis saw an old white car going east as he approached the store near 7 a. m. on the day in question before discovering the bodies. The testimony about the arrest of White and that of the ballistics experts need not be repeated. Viewing all the evidence in the light most favorable to the jury's verdict, we conclude it is sufficient to sustain the conviction.

■ Appellant also asserts the trial court erred in permitting two court-appointed psychiatrists to testify, over objection, as to matters related to them during psychiatric examinations. He contends the same was in violation of the Fifth and Sixth Amendments, United States Constitution, and Article 46.02, Sec. 2(f)(4), Vernon's Ann.C.C.P. (now Article 46.02, Sec. 3(f), Vernon's Ann. C.C.P.), and Article 37.071, Vernon's Ann.C. C.P.

Article 46.02, supra, provides for the appointment of experts to examine an accused as to his competency to stand trial, etc. It provided in Section 2(f)(4), in effect at the time of appellant's trial, that:

3. Article 46.02, supra, was amended and the related provision is now found in Section 3(f) as follows:

"No statement made by the defendant during the examination or hearing on his competency to stand trial may be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding." Acts 1975,

"No statement made by the defendant during examination into his competency shall be admitted in evidence against the accused *on the issue of guilt* in any criminal proceeding no matter under what circumstances such examination takes place."[3] (Emphasis Supplied)

In *Ballard v. State*, 519 S.W.2d 426 (Tex. Cr.App.1975), a psychiatrist who had examined the defendant was permitted, over objection, to testify at the guilt stage of the trial to statements made by the defendant during the examination which were inconsistent with the defendant's testimony. It was held that such testimony by the psychiatrist was in violation of the express provisions of Article 46.02, Sec. 2(f)(4), supra. Cf. *Smith v. State*, 502 S.W.2d 814 (Tex.Cr. App.1973).

In the instant case the witnesses Drs. Holbrook and Grigson were appointed by court, upon request by appellant's earlier appointed counsel, to examine the appellant as to his competency to stand trial. They *did not* testify at the guilt stage of the trial. They were not called until the penalty stage of the trial or the "separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment." See Article 37.071, supra. The issue of guilt had thus been determined by this time. Nevertheless, the trial judge, upon objection, forbade them to testify as to any statements made by the appellant during the examinations.

Both doctors were permitted to testify that the appellant was a sociopathic personality, an anti-social type, who had no regard for another person's life or property, no remorse, that his condition would not improve and he would remain a continuing threat to society. Article 37.071, supra, which provides for "a separate sentencing proceeding,"[4] provides in part:

64th Leg., ch. 415, p. 1095, effective June 19, 1975.

4. Actually, the proceedings are the penalty or punishment stage of a capital murder trial, the formal sentencing comes later. As noted in the concurring opinion on State's motion for rehearing in *Hovila v. State*, 532 S.W.2d 293, 297 (Tex.Cr.App.1976):

"In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas. . . ."

Such provision gives the court wide discretion in the evidence that may be offered. Clearly the evidence presented was pertinent to the so-called second special issue under Article 37.071, supra, "(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society . . . ."

We conclude that the court did not err in permitting the testimony of the doctors. There was no violation of Articles 46.02 or 37.071, supra. And this is true even though it was established by a bill of exception (out of the jury's presence), that Dr. Grigson based his opinion in part on statements made by the appellant during the examinations.

■ Appellant's contention that the absence of counsel during the examinations violated the Sixth Amendment and that his privilege against self-incrimination protected by the Fifth Amendment was breached has been answered contrary to his contention in *Stultz v. State*, 500 S.W.2d 853 (Tex. Cr.App.1973). See also *Patterson v. State*, 509 S.W.2d 857 (Tex.Cr.App.1974).

In *United States v. Williams*, 456 F.2d 217 (5th Cir. 1972), which was cited with approval in *Stultz*, the Court wrote:

"Williams was not deprived of his privilege against self incrimination when statements made by him to the psychiatrists in the absence of counsel formed part of the basis for a momentary, unfavorable characterization of Williams's personality." See and cf. *United States v. Cohen*, 530 F.2d 43 (5th Cir. 1976).

"A study of Article 37.071, supra, reveals that the drafting of such statute started with out-of-state statutes where the words 'sentence' or 'sentencing' were not used in the same sense as a formal sentence defined in

■ Next appellant urges that the imposition of death as punishment violates the Eighth and Fourteenth Amendments to the United States Constitution. This court has never in its history held that the death penalty constitutes cruel and unusual punishment under such constitutional provisions or under the provisions of the Texas Constitution (Article I, Sec. 13). See also *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App. 1975).

In *Gregg v. Georgia*, —— U.S. ——, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court rejected the same contention. See also *Jurek v. Texas*, —— U.S. ——, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida*, —— U.S. ——, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

■ In a series of grounds of error appellant contends the death penalty is unconstitutional in this State because of the discretion given the prosecutor, grand jury, trial jury, Governor, etc.

In *Jurek v. Texas*, supra, the United States Supreme Court wrote:

"The petitioner first asserts that arbitrariness still pervades the entire criminal justice system of Texas—from the prosecutor's decision whether to charge a capital offense in the first place and then whether to engage in plea bargaining, through the jury's consideration of lesser included offenses, to the Governor's ultimate power to commute death sentences. This contention fundamentally misinterprets the *Furman* decision,[5] and we reject it for the reasons set out in our opinion today in *Gregg v. Georgia, ante,* —— U.S. pp. ——, ——, 96 S.Ct. p. 2937."

For the same reasons we reject appellant's contentions.

We also reject that contention that Article 37.071(b)(2) is so vague and ambiguous so as to violate due process of law for the same reasons set out in our decision in

Article 42.02, supra, but were used as equivalent to punishment."

**5.** *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

*Jurek v. State*, supra. See also *Jurek v. Texas*, supra.

The judgment is affirmed.

ROBERTS, Judge (dissenting).

I

In his original brief filed in the trial court, appellant did not directly raise the issue of the sufficiency of the evidence to support the jury's affirmative answer to the second special issue submitted at the punishment stage of the trial.[1] However, in a supplemental brief filed in this Court, the appellant has raised this issue through several new grounds of error which allege that because of the lack of such evidence he was denied the effective assistance of counsel.

I would consider this previously-unassigned error in the interest of justice. Art. 40.09(13), Vernon's Ann.C.C.P.; *Purcell v. State*, 167 Tex.Cr.R. 565, 580–584, 322 S.W.2d 268, 276–279 (1959) (opinions of Morrison, P. J., and Davidson, J.). In doing so, I would observe that this Court has the duty in capital cases to "provid[e] prompt judicial review of the jury's decision" in order "to promote the evenhanded, rational, and consistent imposition of death sentences under law." *Jurek v. Texas*, 96 S.Ct. 2950, 2958 (1976) (opinion of Stewart, J.). See also *Gregg v. Georgia*, 96 S.Ct. 2909, 2939–2940 (1976) (opinion of Stewart, J.), and *Proffitt v. Florida*, 96 S.Ct. 2960, 2966–2967, 2969–2970 (1976) (opinion of Stewart, J.).

II

In the present case, the evidence supporting the appellant's guilt was circumstantial. See *Casey v. State*, Tex.Cr.App., 523 S.W.2d 658. Moreover, the evidence conclusively showed that the appellant did *not* participate in the actual killings. Likewise, the evidence does not reveal any predisposition

on the part of appellant to kill anyone. I would hold that this evidence is insufficient, standing alone, to support an affirmative answer to the second special issue. See *Swan v. State*, 322 So.2d 485 (Fla.1975); *Taylor v. State*, 294 So.2d 648 (Fla.1974).

III

The only other evidence supporting the jury's answer to this special issue is the psychiatric testimony presented at the punishment stage of the trial. Therefore, I turn next to an examination of the probative value of this testimony.

In *Hopkins v. State*, 480 S.W.2d 212 (Tex. Cr.App.1972), the defendant contended that "the trial court erred in not permitting a defense witness, Dr. Yero, who is a psychiatrist, to testify as to his opinion regarding the credibility of the State's principal witness, Marquez." *Hopkins v. State*, supra, at 217. We overruled this contention and held that psychiatric testimony could not be used for impeachment since "the benefit to be gained from such testimony is not great enough to offset the disadvantages . . . ." *Id.*, at 220.

We then elaborated on this holding with the following language:

"The state of psychiatry is such that it is more an art than a science. There exists a great deal of divergence of opinion among eminently qualified and learned men of the profession. Also, being of the nature that it is, psychiatric opinion is not only often divergent, but is often inexact. In view of this nature, the benefit to be gained by the jury would quite probably be slight. Often the jury would be subjected to conflicting witnesses and inexact opinions, the value of which would be minimal in enabling the jury to decide the issue of credibility. *As is so often the case in those instances where psychiatric testimony is now permitted, the jury will quite likely be wit-*

---

1. This special issue, framed in the language of Art. 37.071(b)(2), Vernon's Ann.C.C.P., was as follows:

"Do you find from the evidence beyond a reasonable doubt that there is a probability

that the defendant, James Livingston, would commit criminal acts of violence that would constitute a continuing threat to society?"

ness to a 'battle of experts' who are called, in reality, not for the general knowledge which they can bestow upon the court, but for the partisan benefit which the parties who called the witness hope to receive." (Emphasis added). *Id.*, at 221.

Four present members of this Court joined in this language, yet now a majority of the Court is convinced that such inexact and ethereal testimony is sufficient to support a jury's finding that the extreme penalty should be imposed.[2] I cannot agree. I would hold that this evidence is not enough—either standing alone or in conjunction with the evidence produced earlier in the trial—to support an affirmative answer to the second special issue. *Swan v. State,* supra; *Taylor v. State,* supra.

This Court should fulfill its obligation to review the validity of death sentences imposed in this State. *Jurek v. Texas,* supra; *Gregg v. Georgia,* supra; *Proffitt v. Florida,* supra.

In *Ex Parte Derese,* 540 S.W.2d 332 (Tex. Cr.App.1976); this Court considered the sufficiency of the evidence to support an affirmative answer to the second special issue in a case denying bail to a defendant charged with capital murder. We held that the evidence was "insufficient to support such finding." *Ex Parte Derese,* supra, at 334. We should do no less in this case, as is our duty under *Jurek, Gregg,* and *Proffitt.*

The judgment should be reversed.

---

**2.** Although I agree that such evidence is clearly admissible under Art. 37.071(a), V.A.C.C.P., I cannot agree that its probative value is equally clear.